W. S. YATES and Clara Yates, Plaintiffs-Respondents,

v.

WHITE RIVER VALLEY ELECTRIC CO-OPERATIVE, Inc., Defendant-Appellant.

No. 8617.

Springfield Court of Appeals.

Missouri.

April 10, 1967.

Douglas Mahnkey, Forsyth, for defendant-appellant.

Jerry L. Redfern, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, A. H. Blunk, Forsyth, for plaintiffs-respondents.

HOGAN, Judge.

This case involves an account dispute between the plaintiffs and the defendant, which is a Rural Electric Co-operative organized under the provisions of Chapter 394, RSMo(1959).[1] On January 20, 1965, the defendant discontinued plaintiffs' service for non-payment of charges. Plaintiffs thereupon brought this action for a mandatory injunction to restore service and to recover damages for the wrongful

discontinuance of service. The count for an injunction was abandoned, but the action for damages was tried to the court without a jury, as provided by Rule 73.01. The trial court found for the plaintiffs in the amount of $500.00, and the defendant has appealed.

A very brief statement of the facts will be sufficient to show the nature of the case and the issues involved. As indicated, the defendant is a Rural Electric Co-operative engaged in the sale and distribution of electric energy. It operates in a number of southern Missouri counties, including Taney County, where the plaintiffs' property is located. One of the co-operative's bylaws relative to meter readings and collections is that "if any consumer has a delinquent account and is receiving service through an account carried in another name, their service is to be terminated unless the delinquent account is paid." These bylaws also provide that the acceptance of an application [for membership] by the co-operative shall constitute a contract between the consumer and the co-operative, and provide that all new members shall be issued a letter explaining the regulations concerning payment of the monthly bills and meter readings.

The plaintiffs' property consisted of a residence and a business. The nature of the business is not clearly shown, but the pleadings indicate that it is a restaurant and beer tavern. From 1947 until the time service was discontinued on January 20, 1965, possibly with one interruption, the premises were served as a single unit through a single meter, and there is no question in this case involving service at several locations.

The plaintiffs never became members of the co-operative, though they had received service from the defendant since 1947. For reasons which do not fully appear in the record, the property involved had been served and billed in the name "J. S. Yates

---

1. All references to statutes and rules are to this revision, V.A.M.S. and V.A.M.R.

& Son," even though the "son" was not plaintiff W. S. Yates, but his brother, and Mr. J. S. Yates died in 1951. The questions put by defendant's counsel to plaintiff Clara Yates on cross-examination suggest that plaintiffs had never become members because they were unwilling to make a proper application and tender a deposit. Mr. and Mrs. Yates claim they had made a proper application but that membership had been refused by the defendant. Mr. Spoedt, who said he was defendant's general manager, stated that "we have no record he [Yates] was willing to pay a membership fee and have the account set up in his own name, none whatsoever." Mrs. Yates testified quite positively that she had attempted on several occasions to obtain membership in the co-operative but that it had been refused, and she also testified that she had never been furnished with a copy of the defendant's bylaws or its rules pertaining to meter readings and collections prior to the time service was discontinued.

Some time in April 1964, the Yates property was leased to a Mrs. Monty Pope. Mrs. Pope did not testify. Mrs. Yates stated that Mrs. Pope occupied the premises "from April 14 or 24 until November," and that she re-entered the premises in November. Mr. Yates testified that at the beginning of Mrs. Pope's term "I went down myself to R.E.A." and " * * * told them I would not even be around, that Monty Pope had leased the place and that they would bill her and collect the money from her." He had spoken with a Miss Johnson, later identified as an assistant cashier, and "she said they would take care of it." Being asked if he had not been told by defendant's employees that the "membership" could not be transferred or put in Mrs. Pope's name, Mr. Yates repeated, "I told them she had leased it and she would pay the bill and to collect the bill from her." Miss Johnson recalled the conversation somewhat differently, testifying that "I told

her [Mrs. Pope] that if she wanted an account in her name she would need to put up a deposit and we would change it to her name and she should turn in a reading on the meter and in her case, since she would be classified as a renter, she would have to put up a $10 deposit." According to Miss Johnson, Mr. Yates had said to "leave the account in his name but he wanted Mrs. Pope to be billed * * *." Miss Johnson had then made what she called an "address change." In any event, the account remained in the name J. S. Yates & Son but was mailed "c/o Monty Pope, Reeds Spring, Mo."

There seems to be no question that the account involved, that is, the one carried in the name of J. S. Yates & Son, c/o Monty Pope, fell in arrears between September 25, 1964, and November 3, 1964, and that some amount was due the defendant when service was discontinued. The baffling aspect of the case, and the matter upon which the merits of the action turn, is whose arrearage was involved. We shall discuss this matter further in the course of the opinion, but it is sufficient for the purpose of this background statement to say that some amount was owed defendant on January 20, 1965, when plaintiffs' service was cut off and their meter was removed. From what we have recited, it will be seen that the general subject or topic involved here is defendant's right in the given circumstances to cut off service to enforce collection of an account in arrears.

Upon receipt of the appellant's brief, the respondents filed a written motion to dismiss the appeal or affirm the judgment pursuant to Rules 83.09 and 83.11, upon the ground that the appellant's brief did not meet the requirements of Rule 83.05, which sets out the requirements of form and content for appellate briefs. Specifically, the respondents contend that the appellant's brief does not comply with

the requirements of Rule 83.05(a) (3)[2] and Rule 83.05(e),[3] but in a broader sense the respondents' complaint, as reiterated and expanded in their brief, is that the appellant's brief is not sufficient for them to prepare an effective response because they are unable to determine the specific errors alleged. The appellant made no response to the written motion to dismiss, made no offer to supplement its original brief or make it more specific, and made no request for any modification or suspension of the rules. The cause was submitted without argument.

▇ It is unnecessary to discourse at length on the proper form and content of an appellate brief; this subject has been dealt with effectively and at length elsewhere. See Ambrose v. M.F.A. Co-operative Ass'n. of St. Elizabeth, Mo., 266 S.W. 2d 647; Stone, Effective Appellate Briefs, 15 Journal Mo.Bar 80 (1959); Dew, Manual of Appellate Practice and Procedure in Missouri, 3 U.Kan.City L.Rev. 1 (1958). The purposes of the provisions of Rule 83.05(a) (3) and Rule 83.05(e) quoted marginally are: (1) to give the appellate court a short, concise summary of what the appellant claims the trial court did wrong, and why he claims it was wrong, and (2) to inform respondent's counsel just what the appellant's contentions really are and what he is required to answer. Reifsteck v. Miller, Mo., 369 S.W.2d 229, 235-236 [8, 9]; Domijan v. Harp, Mo., 340 S.W.2d 728, 731-732 [1-3]. Of course, technical perfection is not necessary; if the appellant's specification of his points of error is sufficient to enable the respondent to identify the issues presented and to answer the appellant's contentions, and is sufficient to enable the court to determine, with reason-

able certainty and effort, what the issues on appeal are and what the appellant's position with reference thereto is, then the purposes of Rule 83.05(a) (3) and Rule 83.05(e) have been served. However, as Rule 83.05(e) specifically states, and as the case law has run for many years, the mere assertion of abstract principles of law, without showing how they are related to the trial court's action, is not a compliance with the rule. Magenheim v. Board of Education, Mo., 340 S.W.2d 619, 621 [3]; Jacobs v. Stone, Mo., 299 S.W.2d 438, 440; Arnold v. Reorganized School District No. 3, Mo., 289 S.W.2d 90, 92-93; Beeler v. Board of Adjustment of Joplin, Mo.App., 298 S.W.2d 481, 483 [2].

▇ In this case the appellant's "Points Relied On" consist of five abstract statements of law, accompanied by citations of authority. The "Argument" part of the brief consists of a repetition of those abstractions, with some quotation of the language from the cases cited. No attempt is made to correlate the statements of principle with the facts of the case; indeed, no reference is made to the facts in the printed argument, nor is any effort made to advise this court or the respondents in what way the trial court incorrectly applied the law and the facts in finding for the respondents. True, this is a court-tried case which we review de novo on both the facts and the law, Rule 73.01(d), but even so the burden is still on the appellant to demonstrate error, and we perform those functions only in respect to the specific matters urged by the appealing party. Schlanger v. Simon, Mo., 339 S.W.2d 825, 828, 831 [1] [8]. See Pfotenhauer v. Ridgway, 307 Mo. 529, 534, 271 S.W. 50, 51 [5]. Nor have we a situation comparable to McQuate v.

2. Which requires that the appellant state his "Points Relied On" so as to " * * * show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous * * *."

3. Which further provides that "[T]he points relied on shall briefly and concise-

ly state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed. Setting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule."

White, Mo., 389 S.W.2d 206, 209–210 [1], and cases there cited, in which a "single obvious question" is presented. Some of the abstract principles which the appellant seems to rely on appear to be of doubtful application, though of course one cannot be sure precisely what appellant's position is. The appellant says, for example, that the respondents failed to abide by the rules imposed by the co-operative. Granting for the sake of argument that a member of a co-operative is bound by its reasonable bylaws and rules, because application for membership and acceptance thereof constitute a contract between a co-operative and the member, King v. Farmers Electric Co-op., 56 N.M. 552, 246 P.2d 1041, 1044–1045 [1, 2], the appellant does not undertake to demonstrate why these rules should apply to the respondents, who never became members of the co-operative and who testified they had not seen appellant's bylaws and rules before service was discontinued. Further and more important, the appellant has failed to demonstrate, by reference to specific facts, the application of the primary principle upon which it seems to rely, specifically that a supplier of utilities services may enforce the payment of delinquent accounts by discontinuing service. It seems well established that, subject to certain exceptions, a public utility company may adopt and enforce, as a reasonable regulation for the conduct of its business, a rule that service will be discontinued because of default in payment. However, in the absence of statutory or contractual authority, the company ordinarily has no right to cut off the customer's supply of gas or electricity for non-payment of arrears due from another occupant or owner. Anno., 112 A.L.R. 237, Sections I and III, pp. 237–241, 241–243 (1938); 29 C.J.S. Electricity § 25, pp. 990–991. The most superficial examination of this record would show that the principal live issue upon trial was whether the delinquency involved was properly chargeable to the plaintiffs or to their tenant, and there was evidence pro and con on that point. Possibly the trial court misconstrued the facts or erroneously applied the law to the facts in some respect, but in the absence of a specific allegation of error correlating the law and the facts in some way, we cannot determine whether appellant contends it was the landlord's or the tenant's arrearage which was involved, or why it claims the trial court erred in holding—in effect—that it could not enforce collection of the delinquency by cutting off service. This, we may add, appears to be the determinative issue on this appeal. We would make it quite clear that we do not wish to belittle the merits of the appellant's case, nor do we rule that its position is untenable in any view of the law. We have called attention to some of the questions which appear to be involved only to illustrate our view that in this instance the appellant has failed to point out distinctly the alleged errors of the trial court, and to make known to us and to the respondents what the essential merits of the appeal are. As indicated, the appellant has not undertaken to show any good cause or reason why the interests of justice require a suspension or modification of the rules. In such circumstances, we cannot, in fairness to the respondents, become an advocate for the appellant and " * * * search the evidence in an effort to find some theory, and facts in support thereof, to establish a general assertion that the trial court reached the wrong result." Schlanger v. Simon, supra, 339 S.W.2d at 828 [3]. The respondents' motion to dismiss is sustained, and the appeal is dismissed.

STONE, P. J., and TITUS, J., concur.