Merle Eugene PARKER, Plaintiff-Appellant,

v.

Vern WALLACE, Defendant-Respondent.

No. 9083.

Springfield Court of Appeals, Missouri.

Oct. 28, 1971.

Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 12, 1971.

Application to Transfer Denied Jan. 10, 1972.

Merle Eugene Parker, pro se.

Clyde Rogers, Gainesville, Patrick O. Freeman, Jr., Thayer, Russell G. Clark, Nicholas R. Fiorella, Woolsey, Fisher, Clark & Whiteaker, Springfield, for defendant-respondent.

HOGAN, Judge.

This is a second appeal in a civil action for assault and battery. See Parker v. Wallace, Mo., 431 S.W.2d 136. A jury has again found for the defendant, and the plaintiff again appeals.

In brief, the material facts of the case are that the defendant struck the plaintiff "along side the face," according to plaintiff, on Sunday morning, January 9, 1966, at or near Thornfield, in Ozark County. Though nothing concerning his conviction is shown in this record, it appears that defendant was thereafter charged with common assault in the Magistrate Court of Ozark County, and entered a plea of guilty to that charge. Thereafter, plaintiff sued defendant Wallace and one Hervil Gaulding jointly for assault and battery, praying judgment in the sum of $1,000 actual damages and $10,000 punitive damages against each defendant. At the close of the plaintiff's evidence upon the first trial the court directed a verdict in favor of defendant Gaulding, and the jury found for defendant Wallace and against plaintiff. Upon appeal to our Supreme Court the cause was reversed and remanded for error in argument, the court holding, among other things, that plaintiff had no cause of action against defendant Gaulding. The cause was remanded generally for a new trial against defendant Wallace. Plaintiff again represented himself in the trial of this case, as he has done on a number of other occasions. See Parker v. City School Superintendent, Mo., 451 S.W.2d 10; Parker v. Chamber of Commerce of Ava, Mo., 447 S.W.2d 280; Parker v. Moody, Mo., 446 S.W.2d 596; Parker v. Lowery, Mo., 446 S.W.2d 593; and State v. Parker, Mo.App., 378 S.W.2d 274.

Plaintiff's version of the incident here involved, somewhat abridged from his long narrative recital of the facts, was that on this Sunday morning he was working in an old store building at or near Thornfield which he owns and uses as a library and publishing office. Noting that he was "low on soda pop," he "picked up a carton of bottles and started to walk across the road" to the Gaulding store. Mr. Wallace came out of the store, said what sounded to plaintiff like, "Have you got your big gun?" and said to plaintiff, "You laid for my boy and you followed him." Then defendant reached out for plaintiff, grabbed him, and "hit [him] along side the face." Plaintiff's bottles "went flying all over the ground," defendant then shoved or pushed plaintiff to the ground, and defendant hit plaintiff "altogether five or six times" while he was lying there on the ground. Defendant, plaintiff testified, "had his knee in my back or he was on top of me." Plaintiff kept protesting that he had not hurt defendant or his boy, and then he became numb and "started to black out." Plaintiff saw legs nearby while he was lying in the gravel, and thought they belonged to Mr. Gaulding but "couldn't tell who was

standing there." Finally defendant got up, and plaintiff arose and picked up his glasses which were broken. He exhibited the eye glasses to Mr. Gaulding and asked Gaulding to have a look at them. Plaintiff then called the sheriff. In general outline and substance, plaintiff's version of events was corroborated by a bystander, a Mr. Stepro, who had seen what took place and said, "I imagine he [defendant] hit Merle Parker a time or two."

The defendant's version of the facts was that he "had heard" "the boy [defendant's son] and him [plaintiff] had a little trouble," and that it had come to him that a gun was involved. Defendant had been to the Gaulding store to buy groceries and he came across the plaintiff. Defendant "thought [he'd] talk to him about it." So, defendant inquired if plaintiff had his "big gun on [his] hip;" plaintiff had a carton of pop bottles and swung them at defendant. Defendant thereupon knocked plaintiff down and "grabbed" him; plaintiff began kicking, and defendant held plaintiff down and "shook him," then "turned him loose." Defendant testified, "Nobody didn't separate us. There was people all around us." Defendant "just didn't intend to stand there and let him knock me in the head with that [carton of pop bottles]." Defendant repeated several times that he had been told the plaintiff fired a gun in the presence of his (defendant's) son "a week or so" before the incident on trial. Other facts will be noted in the course of the opinion, but this is the substance of the parties' testimony.

The case presents all the usual problems of pro se appeals, in exacerbated form. In this state, a litigant may of course appear and represent himself in his own case, Klingensmith v. Thurman, Mo.App., 339 S.W.2d 300, 301 [3, 4], but the observations made directly and by inference in such cases as Mazique v. Mazique, 123 U.S.App. D.C. 48, 356 F.2d 801, and Barnes v. United States, 9 Cir., 241 F.2d 252, are appropriate here. There is, at present, a good deal of pro se or pro per litigation, because many people, perhaps brilliant in other fields but untrained in the law, feel that they can better protect their interests if they appear and fight their own battles personally. The courts must, of course, guard the rights of the individual in all cases, but when a litigant is represented by counsel the limitations and circumscriptions upon the actions of the courts are understood by all, while in a matter where the litigant appears in his own person his very ignorance of the substantive and procedural law may and usually does lead him to believe that the proceeding has been unfairly handled to his prejudice. Quite often, if not ordinarily, the pro se or pro per litigant regards the court as a mere forum in which to express his opinion, rather than a judicial tribunal, and usually the pro se litigant expects and sometimes obtains concessions or indulgences from the court to which he is not entitled, merely because of his inexperience and lack of training.

Such is the case here. Despite the fact that plaintiff has been heard twice in the trial courts and once in the appellate court on this relatively simple case, and despite the fact that he says he knows he bears both the burden of proof and the burden of persuasion as plaintiff, he is convinced that the sole reason for the adverse verdict in this case is that the attorneys opposing him committed dishonest and questionable acts in their trial of the case, and that the trial court tolerated those practices. On oral argument to this court, plaintiff has said that he does not "come before this court in the role of a lawyer, nor do I hold myself out as one especially learned in the law. Instead, I come before this court as an advocate for honest justice, *something I have yet to experience in the trial courts of southwest Missouri.* * * * I do not intend to try to support my position by a long argument dealing in statutory law. * * * Neither do I intend to attempt any long dissertation on case law, as it may apply to this particular case. One learned observer once remarked that case law is some-

times a convenient means by which courts are able to perpetuate errors of the past. Now it is no secret to the members of this court that I do not have a very high regard for lawyers as a class, and that I have a particularly low regard for defense or criminal lawyers in particular." Plaintiff at another point argued that "the case at bar is riddled with misconduct and with a flagrant disregard for honor and honesty on the part of defense counsel. * * * Under the conditions which now exist through the lower Ozarks," plaintiff continued, "it is totally impossible for any person who is not a long time native of that area to get a fair and impartial trial." Much of the rest of plaintiff's oral argument runs in the same vein. In support of his position that he received an adverse verdict because of opposing counsel's dishonesty and the unfair treatment he received at the hands of the trial court, plaintiff has filed a 62-page brief and has asserted twelve points of error, some of which overlap to a considerable degree.

An illustration of the order of error asserted by the plaintiff is found in his complaint that at the beginning of the trial the court introduced the defense attorneys as "Honorable Clyde Rogers, who is an attorney from Gainesville, Missouri and * * * Honorable Patrick O. Freeman of Thayer, Missouri, with whom many of you are acquainted." The trial court introduced plaintiff as "Mr. Merle Eugene Parker," and remarked that "he is representing himself and is to the right of the counsel table in front of me." In the "argument" part of his brief, plaintiff states he is "submitting that the subtle inference contained in the [trial] Court's manner of referring to lawyers ['Honorable. * * *'], plus the specific reminder to members of the jury that many of them were personally acquainted with Mr. Patrick O. Freeman, tended to create a feeling in the minds of the jurors that these learned lawyers should receive somewhat greater attention than plaintiff * * * [and] * * * tended to create in the minds of the jurors the image of an aura of sanctity surrounding the lawyers representing the defendant."

■ The plaintiff did not object to the trial court's remarks at the time. The trial court said nothing derogatory about the plaintiff, nor did it compliment Mr. Freeman or Mr. Rogers at the expense of the plaintiff, nor indicate any bias in favor of the defendant. The objection is strained and tenuous to the point of being frivolous.

Another illustrative point is plaintiff's complaint that the defendant's attorneys deliberately and calculatedly interrupted his interrogation of his witnesses with frivolous objections, which, though overruled by the trial court, tended to inflame the minds of the jurors against the plaintiff, and were so intended by counsel. The plaintiff again leaves us without citation of any authority, but as we make out his complaint, it is that opposing counsel objected when they knew the answer plaintiff sought to elicit was relevant, and that the objections were made simply to divert the attention of the jury.

■ We have examined the fifteen objections to which plaintiff seems to be referring, and find nothing unusual or frivolous about them. For the most part, counsel objected to questions he considered leading, or as calling for immaterial information. What plaintiff does not seem to understand is that the trial court has no right to instruct counsel for either side how to try his case, or to dictate trial strategy or tactics. Magerstadt v. LaForge, Mo., 303 S.W.2d 130, 134 [6, 7]; Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 659, 223 S.W.2d 383, 388 [11–13]. An attorney representing a client in court has the duty and responsibility to object to questions which in his judgment call for the introduction of improper evidence, McMahan v. City of Abilene, Tex.Civ.App., 8 S.W.2d 554; 88 C.J.S. Trial § 113, p. 227; 53 Am.Jur. Trial, § 132, p. 115, and although the conduct of the examination of witnesses during

the trial is a matter subject to regulation by the trial court, the court may not wholly deprive counsel of his right to make a record by objection. 88 C.J.S. Trial § 113, p. 227. Moreover, the right of counsel to make an objection does not depend upon the trial court's estimate of its merit. Duncan v. Pinkston, Mo., 340 S.W.2d 753, 756–757 [2]. The objections made by defendant's counsel were succinct and specific, and he in no way interrupted plaintiff in the formulation of his questions by frequent or repetitious objection, as was true in Turnbow v. Kansas City Rys. Co., 277 Mo. 644, 656–657, 211 S.W. 41, 44–45 [5]. Manifestly, there was no prejudice to the plaintiff.

█ As noted, the plaintiff has raised eight or nine additional points, but we decline to consider them as if they had been properly briefed and presented. What the plaintiff seeks, apparently, is the office of this court as a champion and an advocate, rather than as a court of review. The burden of establishing prejudicial error is upon the appellant on appeal, and the respondent does not have the burden of establishing that the judgment was correct, or, as the matter is sometimes put, the burden on appeal is on the appellant to show wherein and why the trial court erred. Nash v. Plaza Electric, Inc., Mo., 363 S.W.2d 637, 641 [2]; Mitchell v. Robinson, Mo., 360 S.W.2d 673, 676–677 [2]; Schlanger v. Simon, Mo., 339 S.W.2d 825, 830–831. Only under Point XI—"The verdict is against the greater weight of credible evidence, is the result of passion, bias and prejudice on the part of the jury, and is against the law under the evidence"—has the plaintiff undertaken to demonstrate what legal principle he claims was violated by the action or ruling he says was erroneous. The answer to this point is, of course, that in jury-tried cases appellate courts do not weigh the evidence; setting aside verdicts as being against the weight of the evidence is a function of the trial, not the appellate, court. Neavill v. Klemp, Mo., 427 S.W.2d 446, 449–450 [13–15]; Curtis v. Curtis, Mo., 427 S.W.2d 410, 412 [1, 2]; Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 590.

█ This court has several times discussed at length the rules pertaining to the form and content of appellate briefs and the reasons, at least our view of the reasons, why they must be enforced. As noted in Yates v. White River Valley Electric Co-operative, Mo.App., 414 S.W.2d 808, 811, one of the purposes of Rule 83.05(a) (3) V.A.M.R.[1] is to give the appellate court a short, concise summary of what the appellant claims the trial court did wrong and wherein and why the appellant claims it was wrong. Technical perfection is not necessary; it is sufficient if the appellate court can determine, with reasonable certainty and effort, what the issues on appeal are and what the appellant's position is with reference thereto, but the rule contemplates a particularization in statement of the points relied on, and the citation of at least some authority to the specific point to which it applies. Wipfler v. Basler, Mo., 250 S.W.2d 982, 985 [4]; Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 912, 245 S.W.2d 96, 102 [11]; Royal v. Thompson, Mo., 212 S.W.2d 921, 922 [5]; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42–43 [4]. The situation we have here is much the same as that which was presented in In re Estate of James, Mo.App., 459 S.W.2d 536, 540–541; we are cited to no authority, statute or precedent, local or foreign, specific or general, to advise us of the principles which the plaintiff conceives to be applicable. With some of the points involved, we are not even informed what the plaintiff sought to do in

---

1. Which requires an appellant to state "* * * [t]he points relied on, which shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous, *with citation of authorities thereunder.*" (Our emphasis.)

the trial court. Plaintiff called Mr. Troy Sallee as a witness. Mr. Sallee testified that shortly before the incident in suit occurred, he had parked or stopped near plaintiff's house and a man whom he believed to be plaintiff had fired a large caliber rifle over his truck. Mr. Sallee believed that the person he thought was plaintiff had thought that he, Sallee, was defendant's son Rex. After Mr. Sallee had been cross-examined, plaintiff asked on redirect for permission to treat the witness as an "adverse witness in order to bring out facts from the past transcript." This request was denied. Plaintiff then asked to take the stand and "clarify some of the statements" which Mr. Sallee had made, asking of the trial court, "Do I understand from the Court that I do not have that right?" The trial court answered that it would not permit plaintiff to impeach his own witness, but if plaintiff had anything to testify to in rebuttal he would be permitted to do so. Plaintiff again asked permission to treat Mr. Sallee as a hostile witness. The request was again denied. Plaintiff now makes the point that the "Court erred in excluding competent, relevant and material evidence offered by plaintiff in rebuttal to testimony given by witness Troy Sallee, a hostile witness." The difficulty we have with this point aptly illustrates the difficulty we have with the entire brief. It is well established that one may not impeach a witness he has called unless it is first made to appear that either the witness himself or the adverse party has by some statement or artifice misled or entrapped the party into calling the witness, and generally such surprise cannot be claimed if the party calling the witness knows in advance that the witness' testimony is going to be unfavorable. Crabtree v. Kurn, 351 Mo. 628, 646–647, 173 S.W.2d

851, 858–859; Woelfle v. Connecticut Mutual Life Ins. Co., 234 Mo.App. 135, 147–149, 112 S.W.2d 865, 872 [5] [6] [7]. Mr. Sallee testified at the first trial, presumably in the same way and to the same matters he testified to on this trial, and plaintiff made no claim of surprise or entrapment. In fact, as far as we are able to determine, plaintiff never made it clear to the trial court *what* evidence he wished to offer in response to Mr. Sallee's testimony, nor has he undertaken to show us what legal principle was violated by the trial court's refusal to receive it. We cannot therefore rule on plaintiff's complaint. State ex rel. Foster v. Price, Mo.App., 426 S.W.2d 921, 926 [3] [4] [5]. The plaintiff's other points are as abstract, devoid of authority, and difficult to follow as the one we have just discussed.

We realize that the plaintiff is not trained as a lawyer, and that he has the right, as noted, to try and appeal his own case. Garrison v. Lacey, 10 Cir., 362 F.2d 798, 799 [2], cert. denied 387 U.S. 911, 87 S.Ct. 1696, 18 L.Ed.2d 630; Klingensmith v. Thurman, supra, 339 S.W.2d at 301 [3, 4]. The rule is, nevertheless, that those who elect to represent themselves in propria persona are entitled to no indulgence they would not have received if they had been represented by counsel. They are bound by the same rules of evidence and procedure as those who are admitted to practice law, and they are held to the same familiarity with required procedures and rules as would be attributed to a member of the bar.[2] We have recently held the hard-pressed members of the bar of our district to careful adherence to the rules of appellate procedure, see In re Estate of James, supra, 459 S.W.2d at 541, and Yates v. White River Valley Electric Co-operative, supra, 414 S.W.2d at 812, and we are not

---

2. Mazique v. Mazique, supra, 356 F.2d at 805 [15] [16]; Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649, 652 [2]; Lombardi v. Citizens National Trust & Savings Bank, 137 Cal.App.2d 206, 289 P.2d 823, 824 [1]; Heikes v. Ft. Collins Production Credit Association, 169 Colo. 27, 456 P.2d 274, 275 [1–3]; Paton v. Rose, D.C. App., 191 A.2d 455, 456 [1, 2]; Stark v. Stark, 79 S.D. 178, 109 N.W.2d 904, 906 [8].

inclined to indulge the plaintiff by reviewing, on our own, points which have neither been properly briefed nor presented.

For the reasons indicated, the judgment is affirmed.

TITUS, P. J., and STONE, J., concur.