John R. CLARK and Margaret Jean
Clark, his wife,
Plaintiffs-Respondents,

v.

Mary PLEIN, Defendant-Appellant.

Nos. 14359, 14397.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 1986.

Don Alcorn Peterson, Brenner, Lockwood & Peterson, Kansas City, William G. Drover, Camdenton, for plaintiffs-respondents.

Mary Plein, pro se.

MAUS, Judge.

In this action, the trial court ordered the defendant-seller to specifically perform a written contract for the sale of a condominium. In a subsequent proceeding, the trial court found the seller in contempt. The contempt decree also provided for the transfer of title by virtue of that decree. The seller appeals from both decrees. The appeals have been consolidated for disposition.

No findings of fact were made or requested. "All fact issues ... shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2). This court is "obliged to accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard such testimony as is contrary thereto and not disturb the judgment unless it is clearly erroneous or, put another way, the evidence palpably insufficient." *Duley v. Leininger*, 527 S.W.2d 456, 458 (Mo.App.1975).

The following is an outline of the ultimate facts viewing the evidence in accordance with the stated rule and as implicitly found by the decrees of the trial court. On April 26, 1983, Mary Plein, as seller, and John R. Clark and Margaret J. Clark, as buyers, entered into a written contract providing for the sale and purchase of "All of Unit 5, Building B of Fawn Valley Condominium ... Camden County, Missouri, (commonly known as top floor, south side B-3)." The contract also provided for the sale and purchase of certain appurtenances to that condominium and items of personal property.

The purchase price was $34,250. This was to be paid by the buyers' assumption of the indebtedness secured by an existing deed of trust on the condominium and the payment of the balance in cash. The buyers placed $2,000 "earnest money" with a title company in Wichita, Kansas, where the seller lived. She had done business with that title company and that company was used at her request.

The seller was to convey the property by a warranty deed "free and clear of all liens and encumbrances whatsoever, except as herein provided." The seller was obligated to deliver to the buyers a commitment from a title company agreeing to insure the title of the buyers to the property in accordance with the contract.

The contract was to be consummated on or before May 2, 1983, at the office of a title company in Camdenton, Missouri. But, the contract further provided "in the event closing is delayed subsequent to May 14, 1983, due to Seller, Buyers, at their option, may declare this contract null and void and all moneys deposited by them shall be returned to Buyers." Possession was to be surrendered to the buyers upon closing.

Upon the execution of the contract, the parties knew the property had been conveyed to the seller as Unit 3 instead of Unit 5. An existing deed of trust also described Unit 3. The parties apparently contemplated the erroneous descriptions could be corrected without delay. The seller was experienced in real estate transactions. She held a real estate brokers license in three states. She knew the meaning of the term "marketable title." She understood she was obligated to provide such a title to the property in question to the buyers. The seller undertook to do so by instructions to her attorney and to the title company.

The erroneous description was not corrected by May 14, 1983. A quit claim deed correcting the description in the conveyance to the seller is dated July 22, 1983. It

was placed of record on July 25, 1983. The buyers were not informed that this quit claim deed had been obtained. During the summer and into the winter of 1983, they repeatedly inquired of the seller and the title company concerning the status of the perfection of marketable title. In early December, 1983, the seller told the buyers that title would soon be acceptable, but that she would not perform unless she was paid additional money. On December 12, 1983, an instrument correcting the description in the deed of trust was placed of record. Subsequently, the buyers made a formal demand that the seller perform the contract. She refused to do so unless paid additional money. By letter of March 13, 1984, the Wichita office of the title company advised the buyers that the seller considered the contract to be cancelled, but conditioned the refund of the earnest money deposit upon the buyers' agreement that the seller was released from any liability.

The buyers filed their petition seeking specific performance and incidental damages on March 19, 1984. In response, the seller filed a general denial and a counter-claim. By the counter-claim she sought a declaratory judgment voiding the contract and, by a second count, damages. She based her claim for damages upon allegations that the title was corrected in August, 1983, and she sustained damages by the unreasonable delay of the buyers in consummating the contract.

Following a trial on March 4, 1985, the trial court rendered judgment for the buyers on their petition and against the seller on her counter-claim. A formal entry of that judgment was made on April 4, 1985. The trial court decreed specific performance of the contract be had in the following manner. In 30 days, the seller should deposit with the circuit clerk (1) her warranty deed and bill of sale conveying the condominium and appurtenances and personal property to the buyers; (2) a title insurance commitment; (3) a quit claim deed of an outstanding claim of a third party; and (4) her agreement to the buyers' assumption of the indebtedness secured by the existing deed of trust. Within ten days the parties

were to authorize the release of the earnest money to the circuit clerk. Within 30 days the buyers were to deposit with the circuit clerk the balance of the purchase price of $34,250, less the balance secured by the deed of trust and the judgment awarded the buyers. The decree contained detailed provisions concerning the disbursement of the funds and the delivery of the instruments by the circuit clerk. The decree also awarded the buyers incidental damages of $4,500. It further awarded the buyers an additional judgment of $5,000 if the seller did not deliver the quit claim deed from the third party and an additional judgment of $2,500 if the seller did not deliver the loan assumption agreement.

On May 14, 1985, the buyers filed their Motion for Contempt. That verified motion alleged the seller had not complied with the provisions of the decree for specific performance. The prayer of the motion was for an order requiring the seller to show cause why she should not be held in contempt, for attorneys fees and damages, and for a conveyance of the property by a decree of the court. An order to show cause was issued. A hearing was held on the motion and order on June 17, 1985. The seller did not appear. By her attorney she announced her intention to appeal from the original decree of specific performance. Following that hearing, the trial court found the seller in contempt and sentenced her to jail and to pay a fine of "$__ per day" [sic] until she complied with the orders of specific performance. However, the decree further provided that the seller should be excused from such compliance in the event the buyers paid the sum of $34,250 to the circuit clerk as subsequently set forth in that decree.

The decree subsequently provided if the buyers made such payment, title to the subject matter of the contract would by virtue of the decree vest in the buyers. The escrow deposit was directed to be paid to the buyers. The decree contained detailed provisions for the disbursement of the $34,250. Those provisions included payment of the indebtedness secured by

the existing deed of trust. The buyers were awarded $3,500 additional damages for attorneys fees. In conclusion, it was decreed "that the judgment entered by this court on April 4, 1985, is incorporated herein and made a part hereof and is supplemented and modified to the extent of conflicting provisions." As stated, the seller appeals from both decrees.

The seller was granted several extensions of time to file the record and to obtain the services of an attorney to file a brief. However, she has filed a pro se brief. Nonetheless, the consideration and disposition of her appeals must be that prescribed by the rules for all appeals.

> [T]hose who elect to represent themselves in propria persona are entitled to no indulgence they would not have received if they had been represented by counsel. They are bound by the same rules of ... procedure as those who are admitted to practice law, and they are held to the same familiarity with required procedures and rules as would be attributed to a member of the bar.

*Parker v. Wallace,* 473 S.W.2d 767, 773 (Mo.App.1971). Also see *Hampton v. Gilmore,* 511 S.W.2d 442 (Mo.App.1974).

In her brief under what is denominated "Arguments and Authorities" appellant sets forth four abstract questions, apparently intended to suffice as Points Relied On. For example, the first question is "whether the circuit court erred in refusing the defendants [sic] request of rendering the contract null and void?" None of the questions approach compliance with the "wherein and why" requirement of Rule 84.04(d). *In Re Marriage of Palmquist,* 632 S.W.2d 317 (Mo.App.1982). None present anything for review. However, by reason of Rule 84.08(a), this court will consider the issues raised by the seller's arguments contained in her brief.

The issues to be so considered are limited to those so raised by the seller. *Kurtz v. Fischer,* 600 S.W.2d 642 (Mo.App.1980). "[I]t is not the duty, and indeed it would be improper, for this court to assume the position of an advocate and to search for any other theory upon which the cross-claim could be maintained." *Stephenson v. McClure,* 606 S.W.2d 208, 211 (Mo.App. 1980). Under such limitation, this opinion should not be considered or construed as approving or rejecting any issue not specifically dealt with herein.

■ The defendant's first argument is based upon that portion of the contract which reads: "If buyers are unable to procure assumption approval for said loan, then this contract shall become null and void ...." She concludes that since that approval was not obtained, the trial court erred. In reaching that conclusion she does not consider the fact the evidence established such approval was not obtained because of her actions. "Where a defendant prevents the performance of a condition of a contract, the condition is excused." *Sassenrath v. Sassenrath,* 657 S.W.2d 671, 674 (Mo.App.1983). Also see *Hillis v. Blanchard,* 433 S.W.2d 276 (Mo. banc 1968). This argument has no legal basis.

■ To make her second argument, the seller quotes a portion of the contract to read as follows: "In the event closing is delayed subsequent to May 14, 1983, due to seller *or* buyers, at their option, may declare this contract null and void ...." (emphasis added). That stated premise is false. In the quotation, a comma after the word "seller" has been deleted and the word "or" inserted between seller and buyers. The contract, as written, grants an option to terminate solely to the buyers.

■ The seller next argues there was no "cloud on title" to delay the closing. Evidence established the discrepancy in the descriptions heretofore mentioned. There was no evidence to the contrary. The cloud on title was acknowledged by the seller in her counter-claim when she alleged "it came to the attention of the parties that an error had been made in the Fawn Valley Condominium plat, which identified defendants' unit as Unit 5, when the parties believed the unit number to be Unit 3, which had been conveyed to defend-

ants as Unit 3." She further alleged that she did secure a correction of the error.

██ The seller then argues she was entitled to reimbursement for expenses incurred during the delay in closing including "payments of attorney fees to obtain merchantable title." This argument ignores the fact that in so doing she was complying with her obligation under the contract. Further, contrary to the seller's argument, the trial court's award of damages to the buyers was supported by the evidence.

The concluding argument of the seller is that she should not have been held in contempt because she made known to the trial court her intention to appeal from the decree of specific performance. It is not necessary to consider this argument. See 4 Am.Jur.2d Appeal and Error § 365 (1962). For cases dealing with a related proceeding see *Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710 (Mo.App.1977); *State ex rel. Coates v. Parchman*, 354 S.W.2d 321 (Mo.App.1962).

The seller does not question the power of the trial court to retain jurisdiction of the case to enforce its decree of specific performance. For those interested, this procedure was decisively analyzed in a scholarly opinion by a distinguished Judge of this court, Justin Ruark, in *Thompson v. Hodge*, 348 S.W.2d 11 (Mo.App.1961). Also see *Henleben v. Krause*, 209 S.W.2d 888 (Mo.1948); *State ex rel. Turner v. Sloan*, 595 S.W.2d 778 (Mo.App.1980); 71 Am. Jur.2d Specific Performance § 222 (1973).

██ That portion of the second decree holding the seller in contempt, as construed by this court, by its own terms is a nullity upon the buyers' payment of the purchase price of $34,250 to the circuit clerk. The second decree also purports to incorporate the original decree of specific performance. The original decree contained punitive judgments of $5,000 and $2,500 in the event the seller failed to comply with portions of that decree. Concerning such punitive judgments see *Wisdom v. Wisdom*, 689 S.W.2d 82 (Mo.App.1985). However, as the two decrees are construed by this court, those

punitive judgments are nullities if the contract for sale was specifically performed. The record demonstrates the buyers, on the day of the second hearing, did pay the purchase price of $34,250 to the circuit clerk. Upon that payment, by reason of the subsequent decree, the seller's title to the subject matter of the contract vested in the buyers. Rule 74.20. In effect, the contract has been specifically performed. The judgment of contempt is a nullity. The punitive judgments of $5,000 and $2,500 against the seller are also nullities.

The seller has not by point relied on or by any argument raised any other claim of error. In recognition of her general entreaty against the action of the trial court, this court has examined the record under Rule 84.13. There is no plain error affecting substantial rights from which a manifest injustice or miscarriage of justice could result. Lest there be controversy concerning the construction of the decrees appealed from, those decrees are modified to the extent necessary to conform to the construction thereof by this court, as set forth above. With that consideration, the decrees of the trial court are affirmed.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.