Edward S. THOMAS, Plaintiff-Appellant,

v.

James A. SCHAFFNER, Acting Director of Revenue, State of Missouri, Respondent.

No. 25263.

Kansas City, Court of Appeals.

Missouri.

Dec. 1, 1969.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for appellant.

Charles W. Franklin, Asst. Pros. Atty., Columbia, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal by Edward S. Thomas from the denial of his application for reinstatement of his automobile driver's permit.

■ Since the Director of Revenue is only a passive participant in the litigation, he is neither a contesting nor participating party, and an appeal to the Supreme Court under Article V, § 3 of the Missouri Constitution, V.A.M.S. would not have been proper. In Re Spencer, 439 S.W.2d 8, l.c. 9 and 10(1–2) Mo.App. No amount of money is involved.

On November 10, 1968, appellant, a student at the University of Missouri at Columbia, was driving his automobile on Highway 740 in Columbia. He was observed by Trooper Larry Buschjose of the Missouri Highway Patrol, who testified that appellant's car crossed "a foot or two over the center line." The trooper followed the appellant and stopped him in the parking lot of a woman's dormitory where he was returning a young lady who was also a student at the University. At this time, 3:00 a.m., appellant was informed that he was under arrest for driving while intoxicated.

Appellant was employed by Mr. Bill Tar at the latter's place of business, which is located on Highway 63 south of Columbia. On the date of the occurrence appellant left his place of employment at 12:15 or 12:30 a.m. Accompanied by the young lady and another couple he drove to the apartment of a fraternity friend where a reception was being held. About twenty other persons were there. Appellant said that during the period he was at the reception he drank "a can and a half of beer." The young man who had gone with appellant to this reception saw appellant as he was leaving the apartment. He testified that appellant was "very sober." The young lady whom appellant was returning to the dormitory where she lived, testified that at the time of appellant's arrest "he seemed completely sober."

After his arrest appellant was driven to the Columbia Police Station by a member of the Columbia police force. They arrived at the station at approximately 3:25 a.m., where appellant and another person were taken upstairs. The officers gave a breath test to another person first while appellant waited in another room. The time for the test for the first individual was from 10 to 15 minutes. The officers then told appellant to come into the room and take the breath test, whereupon appellant told them he would rather take the blood test than the breath test because he thought the blood test was more accurate.

The officer told him he would have to get his own doctor, and he said he would try. Appellant testified that he was not informed that his permit would be suspended if he failed to take the breath test, although the trooper said appellant was so informed. The time was approximately 3:25–3:40 a.m.

Appellant was then taken to the Sheriff's office in the Boone County Courthouse, one-half block from the police station where he was allowed to make a phone call to see if he could get a blood test. Appellant called his fraternity advisor, Mr. William C. Trice and asked if Mr. Trice could find him a doctor to administer the test. Mr. Trice informed appellant that he could not get him a doctor "at this time of night" but told appellant that he would call a lawyer for him, and did immediately call a Columbia attorney, Mr. Richard Thomas. Mr. Thomas called appellant at the Sheriff's office and advised him to take the breath test. Immediately after talking to Mr. Thomas appellant turned to the officers and offered to take the breath test. The police then refused to give him the test, although the testing apparatus was only one-half a block away. The time was then between 3:45 and 4:00 a.m.

Appellant's driver's permit was revoked by the Director of Revenue. Thereupon, appellant, pursuant to Section 564.444 V. A.M.S., made application for a hearing before the Boone County Circuit Court, which was held on December 3, 1968. The court's order stated: "Court finds that Petitioner was arrested; that arresting officer had reasonable cause to believe Petitioner was driving while intoxicated and that Petitioner refused to submit to chemical breath test. The petition to set aside suspension denied * * *."

Appellant filed his Motion to Amend Judgment and Enter Judgment for Plaintiff, or in the alternative Motion for New Trial. The court failed to act within 90 days, and appellant perfected his appeal.

Appellant's first contention is that: "The court erred in finding that the only test contemplated by Section 564.444 V.A.M.S. was the chemical breath test."

Section 564.441 V.A.M.S. provides that any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Sections 564.441, 564.442 and 564.443, to a chemical test of his breath * * *. Paragraph 2 of Section 564.441 refers to a "chemical test of his breath * * *." Paragraph 3 provides that certain qualified persons, at the request of the person tested may administer a test in addition to any administered at the direction of an officer.

Section 564.444 V.A.M.S. states: "If a person under arrest refuses upon request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test * * * his operating permit * * * shall be revoked." It is to be noted that this section makes no reference to a breath test nor to Section 564.441, the so-called "Implied Consent" statute where a driver is deemed to consent to a chemical test of his breath. It provides for revocation for refusal to submit to a chemical test.

There are primarily four chemical tests used to determine the amount of alcohol in a person's blood. These are the blood test, the breath test, the saliva test and the urine test. The statutes of most states provide for all four chemical tests rather than Missouri's provision in Section 564.441, for only a breath test.

It is stated in the extensive book written by R. E. Erwin, Defense of Drunk Driving Cases, 322 (Mathew Bender, 2nd Ed. 1966) cited in In Re Spencer, 439 S.W.2d 8, Mo. App., that: "Blood analysis is undoubtedly the most accurate and direct chemical test for determining intoxication. It's validity is scientifically established, and it is widely accepted by the courts."

It also should be noted that Section 564.-442 provides that upon the trial of "any person while driving a motor vehicle while intoxicated, the amount of alcohol in the person's blood at the time of the act alleged as shown by chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence."

Appellant argues that Section 564.444 provides for refusal to take a chemical test, not for refusal to take a breath test; that the plain meaning of the statute encompasses other chemical tests; that "this statute (564.444) is independent of 564.441, which merely ties the implied consent provisions into the revocation procedure outlined in 564.444." Appellant concludes his argument on this point by saying: "The revocation of an operator's permit for failure to consent to a breath test when the driver has consented to another chemical test, especially more accurate, is an improper exercise of the administrative power conferred by 564.444."

We need not rule upon the contention in view of the fact that the evidence shows that at no time did appellant make an express or unequivocal refusal to submit to a breath test. And it shows that within an hour after his arrest he made an unqualified offer to take that test.

The testimony discloses that in response to the officer's request that he submit to the breath test, the appellant informed the officers that he would rather have a blood test, correctly believing it to be more accurate. The effect of all the testimony is that appellant merely insisted on a more accurate test than the one offered. Convinced that he was not intoxicated, but wary of intoximeter results because he had drunk part of a can of beer shortly before his arrest, appellant desired to secure the most accurate measure of his blood alcohol. That the officers went along with his request stands undisputed. Appellant testified:

"The Columbia Police Officer, the one that was sitting up here before, Officer

Neal, came out of this room and he said to me, you're to take the balloon test, or words to this effect, the breath test, and I said to him, 'I don't want to take the breath test, I want to take the blood test.' This was my understanding that you could do this. I didn't know. Then Officer Neal said you'd have to get your own doctor or facsimile thereof to take the blood test, then an extension of that, the Trooper then stated the same thing, that Officer Neal had stated to me. He said, "you'll have to take the breath test or you'll have to get your own doctor to take a blood test.' I said 'All right, I'll try' ".

The Trooper testified: " * * * at this time he was advised he could make a phone call, to have someone come down and make his bond, and if he wanted to call somebody to come down and take— get someone to administer the blood test for him, at which time he did make a phone call. I informed him that any qualified person could take the blood test, it could be a doctor, it could be a lab technician. This could be an intern, anyone that is qualified by the Department of Health. Q. Did you tell him who here could give him a blood test? A. I told him the doctors or a nurse or interns or lab technicians could give him a blood test."

As we have stated, appellant was taken to the Courthouse, one-half block from the Police Station, where he was allowed to use the telephone for the first time. He called Mr. Trice and then talked to Mr. Thomas, an attorney. Appellant testified:

"He (Mr. Thomas) called me back and said, 'Well, you've got to take a test, so go back and take that balloon test. Offer to go back and take it.' So I hung up the phone and I went to the Trooper in another Boone County Sheriff's Office. He was sitting there and I said 'I'd like to go back and take the balloon test.' * * * this was about a quarter to four, ten to four, there was a clock behind us on our left. And the Trooper and some other Boone

County Sheriff officer whom I don't know, said to me, 'Well, it's too late.' Well the Trooper stated this first, 'It's too late, you know we've already offered and that's it' * * *. So there wasn't much I could do but wait until I could get ahold of my friends in the morning to get me out so I went on to the jail."

In the recent New York case of Sweeney v. Tofany, 30 A.D.2d 934, 293 N.Y.S. 2d 876 (1968) the driver refused to take a breath test when requested by the police. Some 55 minutes later, he consented to the breath test, but the police refused to administer it. On appeal from the revocation of the driver's permit, the court held that the revocation was to be annulled because the petitioner did not make an understanding refusal to take the test; that the officer's request led the petitioner to believe the test was optional; that his refusal was made in good faith and was not a ruse to gain time, and that his "unqualified offer" to take the breath test was made within one hour, thus no prejudice resulted.

The instant case may be similarly analyzed. The officers led appellant to believe that he could have a blood test in lieu of the breath test, if he could secure a doctor. No evidence exists which impugns appellant's motives and his good faith was never questioned. His *unqualified* offer to take the test came a scant twenty minutes after the test was first offered. There is much to be said in favor of the statement made in appellant's able brief that: "In effect, appellant's license was revoked *not* for refusal to take the breath test, but rather for his inability to secure a doctor at 4:00 o'clock in the morning."

The judgment denying appellant's application and petition should be reversed and the cause remanded to the circuit court with directions to order the Director of Revenue to reinstate appellant's Operator's Permit No. TO85–5090–6085–8212. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the court, and the judgment is reversed and the cause remanded with directions to order the Director of Revenue to reinstate appellant's Operator's Permit No. TO85–5090–6086–8212.

All concur.