John C. GOOCH, Respondent,

v.

James R. SPRADLING, Director of Revenue, State of Missouri, Appellant.

No. KCD 27099.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Motion for Rehearing and/or Transfer Denied June 2, 1975.

Application to Transfer Denied July 14, 1975.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

G. Michael Fatall, W. James Foland, Kansas City, for respondent.

Before SWOFFORD, P. J., and ROBERT R. WELBORN and ANDREW J. HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

Respondent (hereinafter called "licensee") was arrested for driving a motor vehicle while intoxicated and his operator's license was revoked for a period of one year by the appellant for alleged refusal to submit to a breathalyzer test under the provisions of Section 564.444(1) RSMo 1969, V.A. M.S. He filed his petition for review of this administrative ruling as authorized by section 564.444(2) and upon hearing in the court below, the order of revocation was set aside and rescinded. This appeal followed.

The licensee has filed his motion to dismiss the appeal (incorporated in his brief), based upon the assertion that the appellant's brief does not comply with Rule 84.04(b), V.A.M.R., as to Jurisdictional Statement, nor with Rule 84.04(d) as to Points Relied On. Appellant filed his suggestions in opposition to this motion which, at least tacitly, admit these deficiencies. This motion to dismiss was taken with the case and it is now denied. This ruling is made (in face of the fact that the appellant's brief is obviously subject to the failures charged to it) because the jurisdiction of this court is apparent from the transcript

and the briefs, the basic facts are clear, the issue of law is sharply posed, and a final determination of this matter will result in no hardship to the licensee since the enforcement of the revocation order has been stayed by appropriate orders in the court below. Parker v. Wallace, 473 S.W.2d 767, 772[10] (Mo.App.1971). It should be here noted, however, that it continues to be the sincere hope of this and all the appellate courts of this state that counsel on appeal scrupulously comply with the rules and thus avoid the possibility of punitive orders of dismissal.

The single decisive point on this appeal is whether the licensee's refusal to take a breathalyzer test was such a refusal as to invoke the sanction of revocation as provided by Section 564.444 RSMo 1969, V.A.M.R. At the review hearing in the court below, the appellant assumed the burden of proof that the revocation was warranted under the facts by offering the testimony of the arresting officer, which may be summarized as follows:

Garland Howard Rimmer, a member of the police department of Independence, Missouri for one year and nine months, stopped the licensee on September 3, 1973 at or near 38th Street and Queen Ridge Drive within the municipal limits of Independence after following the car driven by licensee for five blocks and observing that the car was being operated in an erratic manner. At this location, the officer observed that the licensee had a strong odor of alcohol about his person, staggered and almost lost his balance, his eyes were glassy and he was swaying. The officer thereupon placed the licensee under arrest for driving while intoxicated. The arrest occurred at approximately 6:36 o'clock p. m. and the licensee was forthwith taken to the Independence police station and the officer prepared the breathalyzer machine for operation. About 15–20 minutes after arrival at the station, the officer then told licensee that he wanted him to submit to the test, and the possible consequences of his refusal

to do so. The officer testified that at this time, the licensee twice refused the test and stated "Somebody tell me my rights, somebody tell me what to do.", and the officer then disconnected the machine. The licensee then talked to Corporal Willoughby, the booking officer, and again twice refused the test. Rimmer testified that the licensee then agreed to the test and he, Rimmer, again set up the breathalyzer machine. Thereupon, the officer stated, the licensee again refused the test, at which time the officer filled out the refusal form as provided by Section 564.444 RSMo 1969, V.A.M.R.

Officer Rimmer testified that after he stopped the licensee's car, he had him under observation for "right at an hour" and that in his opinion, the licensee was "highly intoxicated".

On cross-examination, the officer stated that the licensee asked to see his lawyer, but could not recall when this was relative to their arrival at the police station, except that it was as he started to read the Miranda warning to licensee. He never did actually read the warning. The officer explained "to him that as soon as he was booked in, he would have the right and could call anyone he wished." He did not intend to book the licensee until after he was given "all these tests". There was no question in the officer's mind that the licensee wanted to talk to his lawyer at the time he was being questioned and Rimmer was filling out the alcohol influence report.

The licensee testified at the review hearing in the court below that from the scene of his arrest, he was taken to the police station, and when he first arrived there he requested that he be permitted to contact his lawyer and received no response to this request. When the breathalyzer machine was set up, he refused to take the test and stated, "I'm not going to take any test *until* I talk to my lawyer." During the next hour, he was continually questioned by Officer Rimmer and was asked to perform certain tests, such as the "coin drop" test. He was asked repeatedly "Are you going to

take the test?" and he repeatedly refused "until I talk to my lawyer", except on one occasion, because of the "badgering", he agreed to the test but changed his mind because he wanted to talk to his lawyer. He stated that the officer never explained what the breathalyzer test was or what the consequences of his refusal to take it would be. He testified that had he been permitted to talk to his lawyer and had been advised to take the test, he would have done so. He had never before been convicted of "drunken driving"; had never taken a breathalyzer test; and had never been taken to a police station and quizzed for an hour. On cross-examination, he denied that he was intoxicated and admitted that he became somewhat irritated and argumentative with the officers when he was not permitted to contact his lawyer. He had no previous experience with or knowledge of the breathalyzer test, and the officers said nothing to him about it, except to repeatedly ask him, "Are you going to take the breath test?"

Officer Rimmer and the licensee were the only witnesses at the hearing below.

The court below made Findings of Fact which may be summarized as: (1) Licensee displayed signs of intoxication; (2) he was arrested; (3) at the police station, he was requested to take the breathalyzer test and was advised of the consequences of a refusal; (4) he made repeated demands and requests to consult his attorney, which were refused, and he was not allowed to and did not talk to counsel at any time while under arrest; (5) he refused to take the breathalyzer test; and (6) the policy of the Independence police department, which was accomplished in this case, is that no phone calls may be made until a party is booked, and they do not "book" until after the breathalyzer or other tests are made.

The trial court's Conclusions of Law were as follows:

"1. The plaintiff was arrested.

2. The arresting officer had reasonable grounds to believe that the plaintiff was driving a motor vehicle while in an intoxicated condition.

3. The plaintiff did not refuse to take the breathalyzer test.

4. V.A.M.R. 37.89 guarantees to each individual that is arrested or held in custody by a police officer in any jail, police station or other place, for the alleged commission of an offense or suspicion thereof, the right to consult with an attorney and to use a telephone to do so, if one is available.

5. The plaintiff, although having made the request, was not allowed to consult with his attorney and therefore there was no effective refusal to take the breathalyzer test."

■ A careful review of the transcript discloses that there was ample competent evidence to support the findings of fact summarized above, and the same are approved under Rule 73.01(3)(a), (b), applicable to appellate review in this type of case. Likewise, the trial court's conclusions of law 1 and 2 are proper and comply with the requirements of Section 564.444, subd. 2(1), (2), RSMo 1969, V.A.M.S.

The only remaining matter for decision here is whether the trial court's conclusions of law 3, 4 and 5 comport with legal principles and were proper under the facts of this case. In combination, these conclusions result in a finding as a matter of law that the licensee did not refuse to submit to the breathalyzer test. Section 564.444, subd. 2(3) and Section 564.444, subd. 3, RSMo 1969, V.A.M.S., require that the court make an affirmative finding that the licensee did refuse to submit to the test before an order of revocation may be affirmed.

The conclusions of law of the court below reaching the negative of this proposition stem from an application of Rule 37.89, and so far as the briefs herein and independent research disclose, presents a legal problem never before directly decided by an appellate court in Missouri.

Under the mandate of Article V, Section 5, of the Constitution of the State of Missouri, V.A.M.S., the Supreme Court adopted Rule 37, governing practice and procedure with reference to traffic cases, which rule became effective April 1, 1960. Included are the following provisions:

"Rule 37.02. Rules—Authority for—Purpose and Construction.

These Rules are drafted and promulgated pursuant to authority granted the Supreme Court by Section 5 of Article V of the Constitution of 1945 of the State of Missouri and are intended to provide for the just determination of municipal court proceedings and in traffic cases in all such courts having original jurisdiction. They shall be construed to secure simplicity and uniformity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

\* \* \* \* \* \*

Rule 37.89. Counsel—Right to Consult.

*Every person arrested and held in custody by any peace officer in any* jail, *police station* or any other place, upon or without a warrant or other process for the alleged commission of an offense or upon suspicion thereof, *shall be permitted to consult with counsel* or other persons in his behalf *at all times* and, for such purposes, to use a telephone if one be available."[1] (Emphasis added)

The statutory provision with reference to driving a motor vehicle while intoxicated, the procedures for chemical analysis of alcohol in the blood and the procedures for revocation of an operator's license, Sections 564.441–564.444, RSMo 1969, V.A.M.S., have been labeled with the convenient misnomer of the "implied consent" law. This, upon the theory that the use of public streets and highways is a privilege and not a right, and that a motorist by applying for and accepting an operator's license "impliedly consents" to submission to a chemical analysis of his blood alcohol level when charged with driving while intoxicated. The misnomer is apparent for the reason that a motorist in such a situation under the terms of Section 564.444 RSMo 1969, V.A.M.S., has the present, real option either to consent to the test or refuse it, and preliminarily the police authority must request the test, explain its purpose and the consequences of refusal. Bolling v. Schaffner, 488 S.W.2d 212, 215[4, 5] (Mo.App.1972). The motorist cannot then be bound by any consent which may have arisen by implication upon the issuance of his license. He must make this choice in the atmosphere of his arrest and restraint.

It has been held that a refusal to take the test must be express and unequivocal. Thomas v. Schaffner, 448 S.W.2d 319, 322[2] (Mo.App.1969). In *Thomas*, the arrested licensee had refused the test and asked permission to talk to his lawyer, which was granted. After doing so and on advice of his counsel, he agreed to the test. The police then refused to administer the test. The court held there had been no effective refusal so as to warrant revocation. In *Bolling*, an arrested licensee was permitted to talk to his lawyer, who advised him not to take the test, and the licensee then refused. This court held the refusal to be unequivocal and warranted the revocation. Likewise, in Jones v. Schaffner, 509 S.W.2d 72 (Mo.1974), the licensee was permitted to contact his attorney, who came to the police station and advised licensee to refuse the test, which was thereupon definitely refused. The court in *Jones* held such refusal justified the revocation. In Hester v. Spradling, 508 S.W.2d 194 (Mo. App.1974), the arrested licensee was allowed to call his lawyer, who advised his client at the police station to take the test.

---

1. Section 544.170 RSMo 1969, V.A.M.S., the so-called "20 hour rule", contains substantially the same language as Rule 37.89, except that it is made applicable only to persons arrested "for any alleged breach of the peace or other *criminal* offense." Compare Rule 21.14.

The licensee then gave his specific consent, but the police refused to administer the test because, "He's already refused by smoking." The time lapse between the arrest and the consent was variously estimated from 38½ to 53½ minutes. The trial court held there had been no refusal within the meaning of the law, and that judgment was affirmed.

In all of the cases of *Bolling, Thomas, Jones* and *Hester*, the arrested licensees were permitted to contact their lawyers (with varying results) and in none of them were the provisions of Rule 37 considered. In the case at bar, the licensee made repeated requests to contact his lawyer and was repeatedly denied that right, and the provisions of Rule 37, and particularly Rule 37.89, are directly and importantly involved.

Appellant seeks to avoid the impact of this rule by asserting that the proceedings involve a civil matter, a traffic offense, of minor nature, and therefore licensee had no right to consult an attorney prior to the chemical test and "could not refuse to take the test by insisting on that right." This view cannot be given judicial approval under the facts here presented, for several reasons.

Rule 37.89, adopted by the Supreme Court effective April 1, 1960, constitutes the law of this state upon that subject unless and until it is "annulled or amended by a law limited to the purpose" by legislative enactment. Article V, Section 5, of the Constitution of Missouri. No such legislative annullment or amendment has occurred. The so-called "implied consent" statute, Section 564.441 RSMo 1969, V.A. M.S. was adopted in 1965, some five years after the effective date of Rule 37.89. Laws 1965, p. 671, §§ 1, 2. The revocation of license provision, Section 564.444 RSMo 1969, V.A.M.S., was adopted by the legislature at the same time. Laws 1965, p. 672, § 4. Neither legislative enactment undertakes in any way to annul or amend Rule 37.89. Accordingly, the statutes and the

rule must be read together so that the ultimate rule of both substantive and procedural principles thus expressed merge into the determinative law of this case.

The same canons of construction are applicable to the Rules as are universally applied to construction of legislative enactments. Garland v. American Family Mutual Insurance Company, 458 S.W.2d 889, 890–891[1, 2] (Mo.App.1970). One of these canons is that the purpose and intent of the court in adopting the rule be ascertained. It was obviously the purpose and intent of the Supreme Court by the adoption of Rule 37.89 to extend to persons under arrest for traffic offenses the right to representation and advice of counsel "at all times" after his arrest. There is nothing ambiguous or obscure in the language employed. Clearly in this case and under these facts the licensee was denied these rights, whether the pending charge against him was to be theoretically denominated civil, quasi-criminal or criminal in character. Such distinctions become meaningless under Rule 37.89.

But the rule is not meaningless and cannot be disregarded nor its clear import vitiated by a policy of the Independence, Missouri police department to deny contact with counsel until all tests, questions and examinations have been completed and the arrestee booked. In Levin v. Carpenter, 332 S.W.2d 862, 866[6] (Mo.1960), the court held that rules of practice and procedure in traffic cases adopted under constitutional authority by the Supreme Court (of which Rule 37.89 is an integral part) should be carefully followed by all departments of the government charged with the procedures.

Of course, it is conceivable that the protection of this rule could be so abused or misused by a person charged with driving while intoxicated that a chemical analysis would become useless by the lapse of time (as urged by the appellant) and that such abuse or misuse would be tantamount to a refusal to submit to the test and justify

revocation. But such is not the factual situation in this case. The licensee's request to contact his lawyer at that hour in the evening could have been accomplished by a telephone call within a few minutes or counsel's presence secured within the hour that the request was denied. At least, the record does not indicate otherwise.

The two cases from Missouri relied upon by appellant [Blydenburg v. David, 413 S.W.2d 284 (Mo. banc 1967), and State v. Neal, 476 S.W.2d 547 (Mo. banc 1972) did not involve Rule 37.89 and are not decisive of this appeal. The numerous cases from foreign jurisdictions cited by appellant are not persuasive because none of them involves either statutes or rules such as Rule 37.89.

The licensee herein did not make an unequivocal refusal to take the breathalyzer test under the facts in this case, and the trial court properly so ruled as a matter of law.

The judgment below is affirmed.

All concur.