Donald W. STENZEL,
Petitioner-Appellant,

v.

STATE of Missouri, DEPARTMENT OF REVENUE, Respondent.

No. 36706.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 13, 1976.

Thomas, Busse, Goodwin, Cullen, Clooney & Ottsen, Donald H. Clooney, St. Louis, for petitioner-appellant.

John C. Danforth, Atty. Gen., Clarence Thomas, Richard L. Wieler, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Clayton, for respondent.

SIMEONE, Presiding Judge.

This is an appeal by petitioner-appellant, Donald W. Stenzel, from an order entered by the circuit court of St. Louis County on August 22, 1974, denying appellant's petition to "set aside" a revocation of his driver's license by the Director of Revenue. § 564.444, subsection 2, RSMo 1969.

After the appellant was informed by the Director of Revenue that his license would be revoked on July 3, 1974, he filed, on July 1, 1974, his petition to set aside the revocation. In that petition, Mr. Stenzel alleged that on or about June 11, 1974, he was arrested in Crestwood, Missouri, and charged with operating a motor vehicle while intoxicated, and that the Director of Revenue ordered a revocation for one year for an alleged refusal to submit to a chemical test. As grounds for his petition, he alleged that (1) he was "deprived of a right to counsel after he requested same"; (2) the arresting officer did not have reasonable grounds to believe that he was "driving in an intosicated [sic] condition"; (3) the affidavit prepared by the arresting officer which was submitted to the director was not "properly prepared" as required by law; and (4) he did not "refuse" to submit to the test but did, "in fact, request to take said test and was refused same by the arresting

officer." Alternatively, he requested limited driving privileges under § 302.309, RSMo 1969.

After a motion to stay revocation was sustained, a hearing was eventually held before the circuit court of St. Louis County on August 19, 1974. At the hearing the arresting officer testified for the state and the appellant testified in his own behalf. Two other witnesses also testified for the appellant.

Officer "Bill" Schliemann of the Crestwood Police Department was the principal and only witness for the state. He testified that at about 9:30 p.m. on June 11, 1974, he received a "call of an automobile accident involving injuries" "at or near Highway 66 and Starling." Four persons had been injured. Upon arrival at the scene, he "went over" to Mr. Stenzel's car to see if he was injured. Mr. Stenzel indicated he was not. Officer Schliemann found Mr. Stenzel alone in the vehicle and "[b]ehind the driver's seat [wheel]." The automobile was "demolished in the front end, the tail lights [were] still on and there was water running out of the radiator." The officer requested him to "get out" of the car, and when he did ". . . he had a strong odor of alcohol, and he wobbled when he got out of the car and almost fell down. . . . Wobbled as in staggering." The officer was "about two feet" away. According to the officer, Mr. Stenzel walked about thirty feet and "[h]e staggered and wobbled around and was having difficulty keeping his balance." The officer asked the appellant if he had had anything to drink, and he answered, "Yes, he had." The officer then placed him under arrest, asked him if he would be willing to take the intoximeter test and informed him that his license may be revoked upon his refusal to take the test. At the scene, Mr. Stenzel "gave his consent." Mr. Stenzel was then "handcuffed" and conveyed to the police station. At the station, the officer again inquired if he would take the test, but this time, according to Officer Schliemann, "he refused for the reason that his attorney previously advised him not to." The officer was then asked: "Did he at any previous or subsequent time to what you said make any other statement whether he would or would not take the test?" The officer replied: "No. After that it was just a refusal, a direct refusal. He didn't want to have anything to do with it."

At no time did the appellant tell the officer that he was driving the motor vehicle.

With the above evidence, the state concluded its case. Thereupon, the appellant's attorney moved to sustain his petition to set aside the revocation because the evidence was insufficient and because the state did not introduce a "notarized statement" of the officer required under § 564.444, subsection 1. "You must file this in order to have a revocation." A long discussion occurred as to the scope of review by the trial court as to which party had the burden to show the existence of the "sworn statement," and whether the sworn statement of the officer was properly filed.

After the long colloquy, the officer was cross-examined. On cross-examination, the officer identified his "affidavit" made to the Director of Revenue which stated (1) that he had reasonable grounds to believe that the arrested person was driving a motor vehicle upon a public highway in an intoxicated condition and (2) that he requested the person to submit to a chemical test but that he refused. This statement, according to the officer, was signed on June 11, but was not notarized until June 13 in the presence of the officer.

On cross-examination, the officer did not remember Mr. Stenzel making any request to take the test at the station and denied that "another individual" came to him "saying that he [Stenzel] would like to take the test." At 11:30 p.m., the officer finally issued an arrest notice to the appellant which was signed by the appellant. On cross-examination, the officer reiterated that at the station he asked Mr. Stenzel if he was ready to take the test, but "[h]e said no. He didn't want me to remind him of what the consequences were." He also

stated that at the scene of the accident, Mr. Stenzel said, "What the Hell happened, somebody hit me."

In defense, Mr. Charles Litsch, a good friend of Mr. Stenzel's, testified that he was at the station that evening and spoke to Mr. Stenzel's attorney on the telephone. The attorney advised him to inform Mr. Stenzel to take the test. This was about 11:00 p.m. Mr. Litsch said he "relayed what you tole [sic] me" and "[t]old him to take the test." Litsch said he overheard "Mr. Stenzel request to take the test from this police officer," but that the officer said "[h]e did not want him to take the test. All he wanted to do was get Stenzel out of there." The attorney requested Litsch to make a note of that conversation, which was done. According to Mr. Litsch, Mr. Stenzel did not appear to be intoxicated. Mr. Stenzel had been at Litsch's home that evening for dinner from 6:00 to 7:30 p.m. and had had "two glasses of wine . . . ."

Mr. Stenzel's attorney, Mr. Donald Clooney, testified and corroborated Mr. Litsch's testimony. He stated that Mr. Litsch called him at home and he advised Mr. Litsch to inform Mr. Stenzel to "take the test . . . and to request it . . ." and make a note of it.

The testimony of Mr. Stenzel was contradictory to that of Officer Schliemann. Mr. Stenzel testified that he requested to take the test, but the officer replied, " 'All I want to do is get this paper work off and get the Hell out of here.' " Mr. Stenzel admitted that at one time, presumably at the station, he refused to take the test and stated, "I didn't want to take the test—my attorneys advised me to take the test only when the attorney was present." He changed his mind, however, when he was advised to take the test by his attorney, Mr. Clooney. He admitted that he was behind the wheel of the vehicle when the officer first came upon the scene and remembered telling the officer that he had had a "couple drinks."

On August 22, 1974, the trial court denied the petition to set aside the revocation, and in due time appellant filed his after trial motion to set aside the order.

Pending this appeal, we stayed the revocation by order of February 10, 1975.

On this appeal, appellant makes three points. He contends that the trial court erred in finding that (1) there was a reasonable basis for the arresting officer to request that appellant take a chemical test, (2) appellant "refused" to submit to a chemical test as required by the statute which is a prerequisite to revoking a driver's license, and (3) all of the statutory requirements were fulfilled, "especially the requirement that the arresting officer submit a sworn affidavit to the Director of Revenue prior to revocation of one's driver's license under Section 564.444, RSMo."

Appellant, in effect, contends that the court erred because there was not sufficient evidence to conclude (1) that appellant was "driving on a public highway," (2) that the officer had reasonable grounds to believe that he was operating a motor vehicle while in an intoxicated condition, and (3) that there was a "refusal" to submit to the test. He further contends that the state had the burden to show that the officer made a proper "sworn report" to the Director of Revenue, and in the absence of such proper sworn report, the court could not sustain the revocation of appellant's driver's license.

■ We turn to the law. This is a court tried case. In such instance, we review both the law and the facts and reach our own independent conclusions, but due regard is given to the opportunity of the trial court to judge the credibility of the witnesses appearing before it. Rule 73.01(3). *Wurtz v. Daniel Hamm Drayage Co.,* 530 S.W.2d 752, 754 (Mo.App.1975). And while Rule 73.01, as amended January 1, 1975, deleted the phrase, "The judgment shall not be set aside unless clearly erroneous," cf. Rule 84.16(b), V.A.M.R.Supp.1975, as it previously appeared in Rule 73.01(d), the appellate courts are still admonished not to be "judicial second guessers" as to trial court

findings.[1]  *Morris v. Holland,* 529 S.W.2d 948, 952 (Mo.App.1975).

Giving effect to the foregoing, we are convinced that the judgment of the trial court should be affirmed.

The standards upon a hearing to reinstate a driver's license are set forth in § 564.444, subsection 2. That section provides that if a person's license has been revoked because of his "refusal" to submit to a chemical test, he may request a hearing before a court of record and

" . . . [a]t the hearing the judge shall determine only:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and,

(3) Whether or not the person refused to submit to the test."

If the judge on the hearing "determines any issue not to be in the affirmative," he shall order the director to reinstate the license to drive.

As to appellant's first argument that there was insufficient evidence to show that appellant was driving in an intoxicated condition, we hold that there was ample evidence to indicate that appellant was, on the evening of June 11, 1974, driving while intoxicated.

The general principle is that the state must show that the defendant was driving a motor vehicle and that he was intoxicated while so doing. *State v. Kennedy,* 530 S.W.2d 479, 481 (Mo.App.1975); *State v. Easley,* 515 S.W.2d 600, 602 (Mo.App.1974); *State v. Kissinger,* 343 Mo. 781, 123 S.W.2d 81, 82 (1938).

Proof that a person was driving while in an intoxicated condition may be direct or circumstantial.[2] Numerous decisions, although our research discloses none in his state, hold that the proof of driving while intoxicated may be based on circumstantial evidence.[3]

We believe that there was ample evidence for the trial court to conclude that the appellant was "driving" the vehicle on June 11. The officer testified that when he came to the vehicle, the appellant was alone in the car behind the wheel, the automobile was demolished in the front end, the taillights were still on and there was water running out of the radiator. This was at Highway 66 and Starling Avenue.[4] Such

1. Even with the deletion of the "clearly erroneous" phrase, recent appellate decisions still cling to the interpretation that, under Rule 73.-01(3), the judgment of the trial court is not to be set aside unless clearly erroneous. *Farmers Alliance Mut. Ins. Co. v. Reed,* 530 S.W.2d 470, 477 (Mo.App.1975); *Ehrle v. Bank Bldg. & Equip. Corp. of America,* 530 S.W.2d 482, 489 (Mo.App.1975); *Keokuk Investment Co. v. Doerhoff,* 530 S.W.2d 507, 510 (Mo.App.1975).

2. A thorough discussion of what constitutes proof of driving can be found in 1 Erwin, Defense of Drunk Driving Cases, § 1.01[2] (3d ed. 1975).

3. *People v. Hanggi,* 265 Cal.App.2d Supp. 969, 70 Cal.Rptr. 540 (1968)—sufficient circumstantial evidence to conclude that defendant was driving when found in car on street, sitting in driver's seat clutching the wheel, with the engine running and the lights on; *People v. Mundorf,* 97 Ill.App.2d 130, 239 N.E.2d 690 (1968)—defendant found sitting in car, lying over steering wheel; *People v. Schulewitz,* 87 Ill.App.2d 331, 231 N.E.2d 678 (1967)—fair inference when a car is found in the street and a person is asleep behind steering wheel.

4. The record only shows that the officer went to the vehicle at or near Highway 66 and Starling. Appellant contends that this does not show that appellant was found on a "public highway." Under § 564.440 [driving while intoxicated], there is no requirement that the defendant drive on a public highway. *State v. Davis,* 143 S.W.2d 244, 247 (Mo.1940); *State v. Weston,* 202 S.W.2d 50, 53 (Mo.1947). Neither is there any requirement on the hearing under § 564.444 to find that appellant drove on a public highway. Although we believe that the trial court on a hearing should find that the petitioner drove on a public highway, there is nothing in § 564.444 to require such a finding. Under that section, the officer's sworn report is made to the director and must state he had reasonable grounds to believe the arrested person was driving upon a public highway, but this is not one of the issues to be found on the hearing. In these circumstances, however, the trial court could properly infer that Highway 66 and Starling Avenue were public streets and

evidence, under any reasonable inference and authorities, is sufficient to satisfy the statute.

▮▮▮ The evidence of intoxication was certainly ample. The officer testified that there was a "strong odor of alcohol, and he wobbled when he got out of the car and almost fell down." This was sufficient evidence of that issue. *State v. Grove,* 204 S.W.2d 757, 759 (Mo.1947); *State v. Kissinger,* supra, 123 S.W.2d at 82. Hence, there was ample evidence showing that appellant was "driving" while "intoxicated."

And there was sufficient evidence for the arresting officer to arrest the appellant. Being "under arrest" the officer had the right to request that the appellant submit to a chemical test.

Appellant, in his second point, contends, however, that there was no "refusal" to submit to the test, and, hence, the trial court erred. He argues that he requested to speak to his attorney before taking the test, and the amount of time between the "moment" he "requested to speak with his attorney" and the time he consented to take the test was not so unreasonable, so that there was no "refusal." But there is nothing in the record to indicate that appellant requested to speak with the attorney. The record shows that the evidence presented by the appellant was that Mr. Litsch relayed a message from the attorney to Mr. Stenzel to submit to a test.

The officer, however, testified that at the scene the appellant consented, but at the station, "he refused for the reason that his attorney previously advised him not to." And "[a]fter that it was a refusal, a direct refusal."

What constitutes a "refusal" has been the subject of numerous decisions.[5] The latest

pronouncement is stated in *Spradling v. Deimeke,* 528 S.W.2d 759 (Mo.1975). There, our Supreme Court stated:

"There is no mysterious meaning to the word 'refusal'. In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal." *Spradling v. Deimeke,* supra, 528 S.W.2d at 766.

Here, the evidence was contradictory on the issue of refusal. Officer Schliemann testified that, although appellant consented to submit to the test at the scene, "he refused for the reason his attorney previously advised him not to" at the station, and "[a]fter that it was just a refusal, a direct refusal." He denied remembering that Mr. Litsch came to him "saying that [Mr. Stenzel] would like to take the test." "[T]his did not occur." He denied that Mr. Litsch told him that the "attorney said to go ahead and take the test." This evidence contradicted the evidence offered by the appellant.

▮▮▮ Where testimony is in conflict, an appellate court gives deference not only to the court's finding on the issue of credibility but also as to its conclusions, and all fact issues are deemed to have been found in accordance with the result reached. *Cole v. Cole,* 516 S.W.2d 518, 520 (Mo.App.1974); Rule 73.01, V.A.M.R.Supp.1975, note 261;

---

could take judicial notice that Highway 66 and Starling are public highways. See Annot., 48 A.L.R.2d 1102, 1134 (1956).

5. *Gooch v. Spradling,* 523 S.W.2d 861 (Mo.App. 1975)—request to speak to attorney does not constitute refusal; *Thomas v. Schaffner,* 448 S.W.2d 319 (Mo.App.1969)—desire to take blood test and speak to attorney—no refusal; *Bolling v. Schaffner,* 488 S.W.2d 212 (Mo.App.

1972)—refusal; *Jones v. Schaffner,* 509 S.W.2d 72 (Mo.1974)—refusal after speaking to attorney; *Hester v. Spradling,* 508 S.W.2d 194 (Mo. App.1974)—no refusal where police refused to give test because he refused "by smoking"; *Dain v. Spradling,* 534 S.W.2d 813 (Mo.App.St. L.Dist., 1976)—request to speak to attorney which was denied is not refusal; see Annot., 88 A.L.R.2d 1064, 1074 (1963).

*Mize v. Sims*, 516 S.W.2d 561, 564 (Mo.App. 1974). The issue here is one of credibility and we defer to the finding of the trial court that there was a "refusal" to submit to the chemical test.

Lastly, appellant complains that the court erred because (1) the sworn affidavit of the officer was not introduced by the state in its case, and in the absence of such affidavit the court could not " . . . exercise the power of revocation . . ." and (2) the affidavit was improper because it was sworn to a few days after it was signed.

■ We find no merit in these contentions. Section 564.444 is explicit as to what shall be determined at the hearing. That section states that at the hearing the judge shall determine "only" three issues. The requirement of a "sworn report" under that section applies to the duty of the arresting officer to report to the Director of Revenue; it has no application to the matters to be determined at the hearing.

■ The fact that it was notarized a few days after it was completed is of no significance. It was signed and sworn to. That is sufficient. An affidavit is "a declaration on oath, in writing, sworn to by a party before some person who has authority to administer such oaths . . . ." *State ex rel. Nollmann v. Gunn*, 513 S.W.2d 710, 713 (Mo.App.1974). Failure to sign renders the instrument ineffective. *Land Clearance for Redevelopment Auth. v. Zitko*, 386 S.W.2d 69, 78 (Mo.banc 1964).

Appellant relies on *Wilcox v. Billings*, 200 Kan. 654, 438 P.2d 108 (1968). There, it was held that under the provisions of the implied consent law, a sworn report of a refusal to submit to a test was mandatory and, where the report was signed by an officer but not in fact sworn to, the revocation of the license was void. Here, the report was signed and sworn to. That decision is distinguishable from this.

We rule this point against appellant.

The common sense and reasonable conclusions of this proceeding are: (1) that there was probable cause for the arresting officer to arrest appellant, and that appellant was arrested, (2) that the arresting officer had reasonable grounds to believe that the appellant was driving a motor vehicle upon the public highway while in an intoxicated condition, and (3) that the trial court could reasonably find that the appellant refused to submit to a chemical test.

We have reviewed the entire transcript, the briefs and the authorities relied upon and conclude that the order of the trial court should be affirmed.

The judgment is affirmed.

GUNN and RENDLEN, JJ., concur.