Pete LOWERY, Jr., Appellant,

v.

James R. SPRADLING, Respondent.

No. 38241.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 19, 1977.

**556**

Jenny, Cole & Eckelkamp, William W. Eckelkamp, Union, for appellant.

Walter A. Murray, Jr., Franklin County Asst. Pros. Atty., Union, John D. Ashcroft, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Plaintiff appeals from an order of the Circuit Court of Franklin County denying his petition to set aside a revocation of his driver's license for refusal to submit to a breathalyer test under § 564.444 RSMo.

On March 23, 1976 plaintiff-appellant, Peter Lowery, Jr., was arrested for driving while intoxicated in Union, Missouri. A police officer of the City of Union Police Department witnessed the appellant crossing over the center-line on Highway 47.

After stopping the vehicle, the officer suspected the appellant was intoxicated. He requested that the appellant take the breathalyzer test. Appellant apparently did not respond and was subsequently transported to the Union Police Station.

Upon arrival at the police station, the officer again requested the appellant take the breathalyzer test. The officer informed him of his right to refuse the test and the fact that if he did, his license would be revoked for one year.

The appellant did not consent, but requested an opportunity to call his employer, Dr. Sharon Woodruff. Due to apparent handicaps, appellant could not read nor write and at times had difficulty understanding conversations. He relied heavily on the advice of Dr. Woodruff.

The officer allowed the phone call and in the process spoke with Dr. Woodruff. The appellant was in the police station two minutes when the call was made to Dr. Woodruff. The officer explained the breathalyzer procedure and the consequences of a refusal to Dr. Woodruff. Dr. Woodruff informed the officer that she would come to the police station shortly and would convince the appellant to take the test. The police officer did not inform Dr. Woodruff or the appellant that he was unwilling to wait for Dr. Woodruff to arrive. In fact, both the appellant and Dr. Woodruff were under the impression that Officer Jones was willing to wait for her arrival. The evidence indicates that Dr. Woodruff was 8 to 10 blocks from the police station. The trial judge observed that the distance could be walked in 10 minutes.

After the phone conversation, Officer Jones asked the appellant if he was going to take the test. Officer Jones testified that the appellant stated he was not going to take the test if she (Dr. Woodruff) was not present. However, the officer testified that he could not recall the exact words of the appellant.

The appellant testified that he was willing to take the test and informed the officer accordingly, after the officer acquiesced to the presence of Dr. Woodruff.

The officer proceeded to fill out the arrest forms in the process of waiting for Dr. Woodruff to arrive. It took one and one-half minutes to fill out the arrest report. In a period of not more than three minutes, the officer apparently changed his mind about waiting for Dr. Woodruff, and treated appellant's response as a refusal.

Officer Jones proceeded to lock-up the appellant and file the necessary forms in connection with his apparent refusal to take the test. Dr. Woodruff arrived approximately 1½ minutes after the appellant was locked up. Officer Jones informed her of the appellant's refusal, and that he was unable to administer the test in view of being called out of the station on a police call. Dr. Woodruff expressed her dissatisfaction with the change of mind in the officer in not allowing the appellant to take the test. Dr. Woodruff testified:

". . . And at that time I saw the police officer in uniform come forward and I asked him how—where Mr. Lowery was and he said he had locked him up. And I said, 'After you knew I was coming and he would take the test when I arrived you've already locked him up?' 'Yes,' he said. And I asked him, 'Did he take the test?' And he said, 'No.' I said, 'Will you let him take the test, now?' He says, 'I don't have time to fool with that.' And then, approximately a minute or so later, a call came in for—as I recall, battery and assault."

The appellant spent the night in the hold-over and was released the following morning.

In April of 1976 the Director of Revenue informed the appellant that his driver's license would be revoked pursuant to § 564.-444 RSMo effective April 27, 1976. Appellant filed his petition for review in the Magistrate Court of Franklin County in accordance with § 564.444(2) RSMo. The court denied his motion to set aside the revocation, but did stay the revocation until the Circuit Court of Franklin County could hear the appeal.

The de novo hearing before the Circuit Court of Franklin County took place on June 2, 1976. After considering all the testimony, the court concluded that the appellant did in fact refuse to take the breathalyzer test and also denied his motion to set aside the revocation. This appeal followed.

The issues raised by the appellant are basically threefold: (1) whether the appellant's statement that he was not going to take it (the test) if she (Dr. Woodruff) was not present, constitutes a refusal under § 564.444 RSMo so as to mandate revocation of his driver's license, (2) did appellant have a right to the presence of Dr. Woodruff at the breathalyzer test, and (3) whether his refusal was cured by his subsequent acquiescence.

The first issue raised by the appellant is whether his statement constituted a refusal under § 564.444. The appellant contends a refusal must be express and unequivocal, and therefore his conditional consent is not tantamount to a refusal. The issue of what constitutes a "refusal" has been the subject of substantial litigation. *See Stenzel v. State Dept. of Revenue,* 536 S.W.2d 163 (Mo.App.1976); *Dain v. Spradling,* 534 S.W.2d 813 (Mo.App.1976); *Gooch v. Spradling,* 523 S.W.2d 861 (Mo.App.1975); *Hester v. Spradling,* 508 S.W.2d 194 (Mo.App. 1974); *Bolling v. Schaffner,* 488 S.W.2d 212 (Mo.App.1972); *Thomas v. Schaffner,* 448 S.W.2d 319 (Mo.App.1969).

In *Spradling v. Deimeke,* 528 S.W.2d 759 (Mo.1975), our Supreme Court considered what constitutes a "refusal" so as to warrant the revocation of a driver's license pursuant to § 564.444 RSMo. The court stated:

"There is no mysterious meaning to the word 'refusal'. In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by *vocalizing some sort of qualified or conditional consent* or refusal, does not make any difference. The

volitional failure to do what is necessary in order that the test can be performed is a refusal." *Spradling v. Deimeke*, 528 S.W.2d at 766[13]. (Emphasis added).

██ It is true that a conditional consent is tantamount to a refusal. *Spradling v. Deimeke* (Supra). However, the peculiar facts of this case lead us to conclude that when viewed in light of the words and conduct of the police officer, the appellant's response was a consent.

Before discussing the reasoning on which this conclusion is based, it is important to point out that the factual pattern of this case does not fit among other decisions. This case involves a police officer who at one point acquiesced in allowing the presence of a person to witness the test, and a short time later changed his mind in treating the appellant's response as a refusal. We believe that the arbitrary nature of the police officer's conduct should not jeopardize the appellant's rights.

The testimony reflected the fact that the officer spoke with Dr. Woodruff and knew she was within a short distance of the police station. The trial judge commented that Dr. Woodruff was within ten minutes of the police station, even at walking distance. In view of this short distance, it was reasonable for the officer to allow the doctor to be present at the test, especially when the testing apparatus would not be operative for 10–15 minutes.

The appellant testified that after the phone conversation with Dr. Woodruff, the police officer stated, "Well, we'll fill out the papers and she ought to be here by then." The officer testified that he may have made this statement. The inference from this testimony is that the officer was willing to wait for Dr. Woodruff to arrive before he would administer the test to the appellant.

To this extent, the police officer did not treat the appellant's response as a refusal, but rather a bona fide consent. In fact, the test could not have been administered for another 10–15 minutes.

His change of mind took the appellant and Dr. Woodruff by surprise. Both were under the impression that Officer Jones was willing to wait for the doctor to arrive. It is concededly difficult to know how to respond if police officials treat the same statement as both a refusal and a consent.

Further testimony proffered by the police officer indicated that he would have allowed the appellant to take the test if Dr. Woodruff had arrived while he was filling out the arrest forms:

"Q. (By appellant's counsel): If she had gotten there before you had the papers finished would you have allowed him to take the test?

"A. (By the arresting officer): Taking all the circumstances available I would have attempted it but I doubt if I would have been able to complete the test. We had a call. I had already spent a certain amount of time with the gentleman."

When Dr. Woodruff arrived one and one-half minutes after completing the arrest forms, the officer was unwilling.

In view of the fact that the test was not administered after the officer had demonstrated a willingness to wait for Dr. Woodruff, we hold that the appellant's response did not constitute a refusal. It would be manifestly unfair to revoke the appellant's driver's license after he was led to believe that he had complied with the law. Clearly, the police officer gave the impression that the appellant had consented.[1]

1. We believe the trial judge asked the police officer pertinent questions in connection with the availability of the test and whether the appellant had in fact refused to take the test. The questioning by the trial judge is as follows:

"THE COURT: How long does it [breathalyzer apparatus] have to warm up before you can give the test?

"THE WITNESS: Twenty minutes—you have to observe the person for twenty minutes. It has to be to a certain degree. It's got to be either plus or minus fifty degrees hot. And then you have to observe the person that you're giving the test to for twenty minutes to make sure that they don't take anything by mouth. They can't smoke; they can't chew anything at all. You have to

 It is important to note we are not holding that an arrestee has a right to have a lawyer or other person present at the breathalyzer test. It is well settled that an arrestee has no such right. The only time an arrestee has the right to the presence of his lawyer at the administration of the breathalyzer test is when his lawyer appears before or during the administration of the test. *Spradling v. Deimeke,* supra. Furthermore, it is well settled that an arrestee does not have a right, constitutional or otherwise, to condition his consent on the presence of a lawyer. *Spradling v. Deimeke,* supra. However, when a police officer allows a person to be present at the administration of the test, and in doing so treats the arrestee's response as a consent, his subsequent change of mind for arbitrary reasons does not vitiate the consent.

Both *Spradling v. Deimeke,* supra, and *Duncan v. Safety Responsibility Unit,* 550 S.W.2d 619 (Mo.App.1977), consider the question of what constitutes a refusal to take the breathalyzer test. In both cases, the respective courts held in essence that anything short of an unqualified consent is a refusal. However, these cases can be distinguished on the basis of the police officers' conduct. In both cases, the arresting officers treated the arrestees' responses as refusals from the initial statement. The police officers did not give any impression that the arrestees had consented, or led them to believe that they were willing to administer the test under any circumstances.

In light of the above discussion, it is unnecessary to consider the other issues raised by the appellant. Applying the standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976), we believe the order of the Circuit Court is not supported by substantial evidence and is against the weight of the evidence.

Judgment reversed.

CLEMENS, P. J., and SMITH, J., concur.

make sure that they don't take anything by mouth.

"THE COURT: Did you observe and have Mr. Lowery in your custody for twenty minutes?

"THE WITNESS: No, sir. I had him in my custody for ten minutes and in my opinion he refused the test within that ten minutes. So there was no sense—

"THE COURT: You couldn't have given him the test anyhow, could you?

"THE WITNESS: No, sir. If he would have said that he would take the test I would have given him the test. I would have waited the twenty minutes to give him the test.

"THE COURT: Well, if he would have said—all right. If he had said he would have taken the test—

"THE WITNESS: Twenty minutes.

"THE COURT: —you would have had to wait for at least another ten minutes, wouldn't you?

"THE WITNESS: Yes, sir.

"THE COURT: Was it—did Dr. Woodruff arrive within the twenty minutes?

"THE WITNESS: Yes, sir.

"THE COURT: So even if he would have said yes you couldn't have given him the test before she arrived, could you?

"THE WITNESS: No, sir, I couldn't.

"THE COURT: Anything further, Mr. Murray?

"MR. MURRAY: No, sir."