Dear Representative Sharpe:
This opinion is in response to your request asking:
 Reading Sections 577.020 to 577.041, RSMo, together is consent to the testing procedures, particularly the invasive procedure necessary for blood testing, provided for in the statutes, negating the need for obtaining explicit consent for the procedure at the time the procedure is administered?
 To what extent, if any, is the hospital in which the test sample is obtained and the hospital's employees free from liability for participating in the procedure? [sic]
 If a person under arrest refuses the tests, as provided for in Section 577.041, are the hospital and its personnel exposed to liability from the perspective of the law enforcement officer if the hospital and its personnel refuse to proceed with the procedure for obtaining blood or other samples without specific explicit consent from the person under arrest?
It is important to note at the outset that Sections 577.020
to 577.041,[1] (hereinafter sometimes referred to as the "implied consent law") address the gathering and introduction in court of chemical evidence for cases "arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition. . . ." Section 577.037. Pursuant to Section 577.020, any person who operates a motor vehicle on Missouri's highways is deemed to have given his or her consent to chemical tests of breath, blood, saliva or urine to determine the alcohol or drug content of his or her blood. The legislature has also provided that any person under arrest who refuses to submit to such chemical analysis shall have his or her driver's license revoked, provided statutory revocation procedures are followed. Section 577.041.
In our view, Sections 577.020 to 577.041 are not intended to alter or diminish the authority of law enforcement personnel to withdraw blood from a motorist under arrest who does not consent to the chemical test established by the United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826,16 L.Ed.2d 908 (1968).[2]
For this reason, the opinions herein expressed are limited to those situations in which an individual has been arrested for a state or municipal drunk driving violation in which the officer has probable cause to believe the individual has committed such a violation and, pursuant to Section 577.041, the officer requests the individual under arrest to submit to a blood test pursuant to Section 577.020. This opinion does not speak to a circumstance in which the officer has a good faith reason to believe that a blood test is necessary to provide evidence concerning the commission of a crime related to driving under the influence of alcohol or drugs. Again, we reiterate our position that Sections577.020 to 577.041 do not diminish the applicability of theSchmerber doctrine in Missouri. See, footnote 1.
 I.
Section 577.037, RSMo Supp. 1983, explicitly states that the chemical analysis performed under Section 577.020 will be admissible at trial "for violation of any of the provisions of Sections 577.005 [repealed], 577.008, 577.010, or 577.012 or upon the trial of any criminal action or violations of county or municipal ordinances arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition. . . ." More importantly, Section577.037.3 provides:
 The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was intoxicated.
Our principal task in rendering an opinion is to seek the intent of the legislature, Breeze v. Goldberg, 595 S.W.2d 381
(Mo.App. 1980), by examining the plain language of the statute.Staley v. Missouri Director of Revenue, 623 S.W.2d 246 (Mo. banc 1981); State ex rel. DeGraffenreid v. Keet, 619 S.W.2d 873
(Mo.App. 1981). The implied consent law was intended by the legislature to create a statutory foundation for the admission of chemical tests at trial, rather than requiring that a scientific foundation be laid in each case. State v. Paul, 437 S.W.2d 98,102 (Mo.App. 1969).
A motorist in Missouri may refuse to submit to a chemical test after arrest. City of St. Joseph v. Johnson, 539 S.W.2d 784,786 (Mo.App. 1976). A refusal to submit to a chemical test results in revocation of a motorist's driver's or chauffeur's license. Id. at 787. Section 577.041. Under prior law, the only chemical test permitted was a breath test. McGuire v. JacksonCounty Prosecuting Attorney, 548 S.W.2d 272, 275 (Mo.App. 1977). In 1982, the General Assembly amended the informed consent law (Senate Bill No. 513, 81st General Assembly) by, inter alia,
expanding both the type and number of chemical tests to include a blood test to be administered under specific guidelines. Section577.029.
Your question necessarily requires us to determine what constitutes a "refusal" in this state. Once again, we call your attention to our caveat that this opinion does not limit the application of Schmerber in Missouri.
Appellate cases in this state hold that "anything short of an unqualified consent is a refusal." Lowery v. Spradling,554 S.W.2d 555, 559 (Mo.App. 1977); Spradling v. Deimeke, 528 S.W.2d 759,765 (Mo. 1975). A statute giving certain benefits or rights to a defendant must be construed liberally in favor of that defendant. State v. Paul, supra, at 103. It would seem, therefore, that a defendant would be able to exercise his "right" to refuse any time up to the actual administration of the test.
Thus, where a person verbally agrees to take a breath test but refuses to blow into the breathalyzer, the person is deemed to have refused. Spradling v. Diemeke, 528 S.W.2d 759, 766 (Mo. 1975). "The volitional failure to do what is necessary in order that the test can be performed is a refusal." Id.
It is the opinion of this office, therefore, that if a person under arrest refuses to submit to a blood test, even though he or she has previously consented to submit to such a test to the arresting officer, the person under arrest has refused under the statute and no blood test should be given. Subsequent withdrawal of consent overrules previously given consent. (We direct your attention to footnote 1, which creates an exception to this general statement in circumstances in which a law enforcement officer forms a reasonable belief that the influence of drugs or alcohol has contributed to the commission of a crime.)
It is not necessary, however, for the doctor, nurse or medical technician personally to receive the express consent from the person under arrest prior to administering a blood test. By driving on the highways of this state, a motorist is deemed to have consented to a chemical test, including a blood test. Section 577.020.1 The test is not administered at the request of the defendant. "The test shall be administered at the direction
of the arresting law enforcement officer whenever the person has been arrested for the offense." (Emphasis added.) Section577.020. Section 577.029 provides that the medical professional shall withdraw the blood "acting at the request and direction of the law enforcement officers." (Emphasis added.) Id. Furthermore, under Section 577.041, it is the arresting officer who must request the person under arrest to submit to the chemical test.
Silence by the defendant is not a basis for inferring a refusal to submit to the test by the defendant. "It has been held that refusal to take the test must be express and unequivocal."Gooch v. Spradling, 523 S.W.2d 861, 865 (Mo.App. 1975). While an explicit refusal expressed to the medical technician would appear to constitute a refusal which would require such testing to cease, it is the opinion of this office that the statute does not require the person under arrest to express his or her consent to the chemical test to the medical professional before a blood test is taken.
This conclusion is buttressed by reference to Section577.033, RSMo Supp. 1983, which states that a person who is dead, unconscious or otherwise incapable of refusing is not deemed to have withdrawn the consent implied by Section 577.020. Consent is assumed until an express withdrawal of that consent or an express refusal is made. Again we say, the hospital employee need not obtain the consent of the person under arrest before obtaining a blood sample; the hospital employee simply acts upon the request of the law enforcement officer, who derives his authority from the statute.
 II.
Your second question deals with the extent of potential liability for a hospital or its employees who obtain a blood sample pursuant to Section 577.020. Section 577.031, RSMo Supp. 1983, explicitly states that no hospital or hospital employee will be civilly liable for obtaining a blood sample except for gross negligence or willful or wanton acts or omissions.[3]
 III.
Your third question deals with the consequences of a hospital or its employee refusing to obtain a sample upon the proper request of a law enforcement officer, should the defendant refuse to submit to the test. Section 577.029 states:
 A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood, unless such medical personnel, in his good faith medical judgment, believes such procedure would endanger the life or health of the person in custody. (Emphasis added).
Though the statute states the sample "shall" be obtained, there are no penalties imposed for failing to obtain a sample upon a proper request. More important, as we point out above, an individual who refuses to give a blood sample, or does not cooperate so that a sample may be taken, has "refused" as the term is intended in Section 577.041 and no test should be given. Recognition of the individual's statutory right to refuse by both the medical practitioner and the law enforcement officer should avoid any possible conflicts and any uncertainty as to whether the test should be conducted. However, in a Schmerber context, we believe that the hospital should cooperate with law enforcement officials and conduct the test as directed by the law enforcement officer.
The waste of human life and property wrought by drunk drivers in our society is the proper concern of all elements of our society. Hospitals have been given an important role in Missouri's enforcement scheme. We trust that Missouri's medical care community would welcome this opportunity to become a partner in keeping our highways as safe as possible through the effective enforcement of state laws relating to driving under the influence of alcohol or drugs.
CONCLUSION
It is the opinion of this office with respect to the chemical testing procedure of Sections 577.020, et seq., RSMo Supp. 1983, for the purpose of determining whether a person was driving a motor vehicle in an intoxicated or drugged condition, that:
(1) The legislature has given motorists the right to refuse to take a chemical test, including a blood test, upon arrest for driving while intoxicated,
(2) This right to refuse can be exercised at any time prior to submitting to the test,
(3) Once the individual has clearly and unequivocally indicated his or her refusal, no test should be conducted, even if the individual initially indicated a willingness to take the test,
(4) In the absence of such a refusal so long as a hospital or its employee is taking a blood sample pursuant to the request of a law enforcement officer who has arrested the defendant, the hospital and its employees are immune from liability except for acts which are wanton, willful or grossly negligent, and
(5) Sections 577.020 to 577.041, RSMo Supp. 1983, do not diminish or alter the authority of law enforcement officials to require chemical tests of the blood of a person under arrest as outlined in Schmerber v. California, 384 U.S. 757 (1968).
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] All statutory references herein are to RSMo Supp. 1983, unless otherwise noted.
[2] The distinction we draw between Schmerber and the question you ask is an important one. In Schmerber, the United States Supreme Court approved police officers obtaining blood samples from persons suspected of driving under the influence of alcohol or drugs without a search warrant and over the express refusal of the person under arrest to submit to the blood test. The Court reasoned that the delay required to obtain a search warrant might result in a loss or destruction of evidence, given the fact that blood alcohol content diminishes through the passage of time.
We do not intend for this opinion to diminish in any way the ability of law enforcement personnel to obtain a blood sample from a person suspected of driving under the influence of alcohol or drugs when the person under arrest refuses to submit to such a test and when the person under arrest is reasonably believed by law enforcement personnel to have been involved in a related crime for which evidence of driving under the influence of alcohol or drugs is germane, e.g., manslaughter. See, e.g.,State v. Thompson, 674 P.2d 1094 (Mont. 1984); Van Order v.State, 600 P.2d 1056 (Wyo. 1979); State v. Heintz, 599 P.2d 385
(Ore. 1979); State v. Rubarge, 391 A.2d 184 (Conn. 1977); Peoplev. Sanchez, 476 P.2d 980 (Colo. 1970). In addition, we note that the Fourth Amendment to the United States Constitution and Article I, Section 15, Missouri Constitution (1945), are limits on police power, protecting not against all searches and seizures, but only against "unreasonable" searches and seizures.See, e.g., Chimel v. California, 395 U.S. 752 (1969).
[3] While Missouri common law generally does not recognize "degrees" of negligence and, therefore, makes no distinction between negligence and "gross negligence", Warner v. SouthwesternBell Telephone Company, 428 S.W.2d 596, 603 (Mo. 1968), it is also true that we have to presume that the legislature intended what was expressed in the plain words of the statute. DeGraffenreidv. Keet, supra. A hospital or its employees could be liable if the employee acted with gross negligence or acted wantonly or willfully. Whether such liability attaches for acts which are merely negligent is not a question which is necessary for us to resolve in this opinion.